United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

Plaintiffs, Patricia Williams,
Barbara M. Braun and other
Beneficiaries to the Estate of
Raymond E. Braun

Case No. 08 C 1695

v.

**RECEIVED**

Defendant(s)
Raymond M. Braun,
Daniel Maher, and
Patrick DiPaolo and other
Defendants unknown at this
Time.

APR 2 4 2008
APR 24 2008
**MICHAEL W. DOBBINS**
**CLERK, U. S. DISTRICT COURT**

## Amended Complaint

Plaintiffs request jurisdiction of this court due to diversity of defendants known and unknown at this time. Upon information and belief unknown defendants influencing defendant to breach his responsibility as fiduciary reside in Illinois, Wisconsin, Florida, California and Arizona which can be proved at trial. Plaintiffs request jurisdiction under 42 USC 1983 as the following will demonstrate. We also request that the court have jurisdiction under the Americans with Disabilities Act. Plaintiffs claim excess of $75,000.00.

1)    Mrs. Braun is a 74 year old woman who suffers from COPD, spinal degeneration, pneumonia and is on oxygen 24/7. She had lung cancer that went into remission in 1987. She was employed as a legal secretary until she was 65 years old. Attached is the Power of Attorney for Healthcare for Mrs. Braun. (Exhibit A)

2)    On February 22, 2007 Advanced Pain Centers ("APC") diagnosed Mrs. Braun as having COPD and spinal degeneration. APC did not treat Mrs. Braun but did speak with her primary care physician, Dr. Mayar Zayan. (Exhibit B)

3)    Patricia Williams is Mrs. Braun's 50 year old daughter who is the daughter of the decedent Raymond E. Braun, Mrs. Braun's former husband (1957 through 1977) who passed away on February 19, 2008. Williams is on Social Security Disability Income for quite sometime known to many of the defendants.

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

4)    Raymond M. Braun is Mrs. Braun's 48 year old son and her
Financial Power of Attorney for several years and executor of his late father's
estate.

5)    In mid September Defendant Braun and social workers of
Rosewood Care Facility prevailed upon Plaintiff Williams to submit a public aid
application on behalf of Plaintiff Barbara M. Braun inasmuch as she had
Medicare and State Farm Insurance.  This application was filled out on October
4, 2008. (See Exhibits C).

6)    Ms. Braun was told to write out a $5,100 check and was informed
that she would be reimbursed said monies ($5,100).  In addition, it was stated
that she would be reimbursed retroactively for her stay at the Rosewood facility
and be reimbursed for the majority of her medical bills retroactively since July
2007.

7)    Defendant Braun terminated Mrs. Braun's lease at 55 South Vail
Avenue, Apartment 308, Arlington Heights, IL  60005 in October of 2007.    Ms.
Braun was therefore locked into "self pay" at Rosewood Care facility.   (Exhibit
D).

8)    Defendant Braun has been in control of decedent father's,
Raymond E. Braun's, estate since August of 2007.   In early autumn of 2007
Williams delivered to Braun's home copies of the documents detailing his
instructions left with Williams in July 2007.  He wanted Mrs. Braun to be provided
for in the event something happened to him.   (Exhibits E, F & G).

9)    Via electronic email Braun stated that he had a trust document fully
executed on behalf of his father around September of 2007.   After repeated
demands and requests beneficiaries were never sent copies of this document

10)    Braun has never rendered to the Plaintiffs and other beneficiaries of
the decedent's estate any accounting, receipts or a statement of his activities as
executor regarding the care and management of the property, money received,
or distributed despite repeated demands to do so.

11)    Williams had not obtained a copy of this document until it was
received by electronic mail on Sunday, March 30, 2008 and opened several days
later.  Upon observation it appeared that the signature of the decedent was
obtained under duress or certain symptoms that result from other means.
(Exhibits H, I, J).

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695


12)   In October of 2007 Plaintiff Williams sent Braun a letter with a copy
of the Rosewood invoice requesting that he at least pay a portion of the bill that
was causing both mother and daughter a great deal of stress, depression and
anxiety.  Braun refused to release any funds for his mother.  (Exhibit K).

13)   Around December 11, 2007, Williams traveled to the Rosewood
Care facility to discover her mother sleeping at 12:00 p.m., her breakfast tray was
left at the side of the bed and she appeared to be drugged.  In good faith
Williams contacted various representatives about her concerns and did not hear
from them until late January.

14)   On January 22, 2008, Administer of Rosewood Care Center, Mr.
Patrick DiPaolo, called patient Barbara M. Braun into his office and questioned
her about her finances.  He then gave her a document that was entitled, "Notice
of Involuntary Transfer or Discharge and Opportunity for Hearing" informing her
he was going to proceed with a transfer of Ms. Braun to "Village Nursing Home"
in Skokie, IL.  (Exhibit L).

15)   Williams tendered to Braun a copy of the above referenced
Involuntary Discharge document as worry and fear about her mother increased.
Again, he refused and failed to release any money from his father's estate and
refused to research any other avenues in which to remedy this problem.

16)   Around January of 2008 Rosewood attorney Daniel Maher called
Williams and defendant Braun.  He stated that he was in the process of
negotiating a deal with public aid.  He also reminded Williams about the
discharge hearing that he had scheduled with the Illinois Department of Public
Health.

17)   Braun still failed and refused to turn over any documentation on the
estate of his father who, again, desired his mother to be taken care of.

18)   Around January 24, 2008, the heating in the wing at Rosewood
facility had not been adjusted and there had been a draft in Mrs. Braun's room for
a couple of days.  It was reported to a nurse named "Candy."

19)   On January 25-26th Plaintiff Braun documented her feelings and
fears about the "meeting" with regard to the involuntary discharge planning.  She
turned it in to DePaolo.

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

20)    On January 29, 2008 Plaintiff Williams traveled to the Rosewood finding her mother laying there very weak and pale. She reported that she had chest pains and felt she had pneumonia. Staff resisted Williams's efforts to get Mrs. Braun treated for medical care to the point where one of the staff members stated that she didn't know if she could even let mother and daughter "borrow" a tank to get her to a hospital. Williams took her mother to a local hospital where she was diagnosed with pneumonia.

21)    Since the discharge from the local hospital Mrs. Braun has been discharged back and forth to three hospitals and several nursing homes some which demonstrated such cruelty that it is difficult to describe in this complaint. However, a description of one of the facilities is attached in an affidavit that a witness provided as an exhibit to this complaint and is factual and truthful. (Exhibit M).

22)    On February 19, 2008, Plaintiff Williams was called to a hospital in Barrington, Illinois, by Defendant Braun who informed her that her father (who had been transferred from Alden Estates of Barrington f/k/a Governor's Park) was dying. This writer can't describe what she saw and heard because it is too painful to even write this down.

23)    Within an hour or so at this hospital Plaintiff and Defendant Braun, his wife and brother, Mike (who hadn't been seen by parents and daughter for four years), observed Mrs. Braun being brought in to the same floor on a gurney to a room across the floor about 25 feet away from Mr. Braun's hospital room. Staff kept coming into the room attempting to manifest a barrage of hatred towards patient Mrs. Braun. It appeared that she was brought in to be made a spectacle of as it was cleverly arranged with and thus a mockery was made of the entire family. One of the "hospice" workers blurted out that Mrs. Braun was suffering from psychosis in Mr. Braun's hospital room.

24)    After several hours of witnessing this Plaintiff Williams departed. Again, it is too painful to detail the acts witnessed that were mental and physical torture to her parents, her brothers and herself.

25)    Raymond E. Braun died on February 19, 2008.

26)    In a letter dated February 19, 2008, attorney Maher sent both Plaintiff Williams and Defendant Braun a document that contained copies of facsimiles that were transmittals between him on behalf of Rosewood and the Illinois Department of Public Aid. He outlined a proposal and indicated that there was an understanding that the monies would be charged from the state budget for a "training" program.

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

27)    On February 22, 2008, Mrs. Braun was sent back to Alden Estates of Barrington.  She was then sent back to the same local hospital from Alden Estates of Barrington at which time they discharged her to the Alden Estates of Long Grove.

28)    On February 29, 2008, Defendant Braun sent Williams an email inquiring if she had sent a check to Daniel Maher and asking Williams for the status on the Rosewood negotiations with same.

29)    On the evening of March 9th, Plaintiffs placed several calls to Defendant Braun describing the conditions witnessed by Mrs. Braun's grandson deemed as cruel and unusual as set forth in the attached exhibit with reference to Alden Estates of Long Grove.    Requests were ignored.

30)    Within twenty four hours Mrs. Braun was moved to Glen Oaks Hospital in Glendale Heights.  Plaintiff Williams received several disturbing calls from women who could barely speak English.  Said move was made out of malice aforethought.  (Exhibit M).

31)    On March 10th, a nurse from Alden Estates of Long Grove identifying herself as "Lydia" stated that Mrs. Braun had been moved to the emergency room of a local hospital in Elk Grove Village.  Plaintiff Williams burst into tears as her father died a horrible death and now she realized her mother's imminent death could possibly be happening.  (Exhibit N).

32)    During the early evening of March 10th, a message was left on Williams' answering machine from another employee of Long Grove Alden Estates and voices of distress could be heard in the background and it appeared to be plaintiff's mother.  The caller stated that the patient was moved to Glen Oaks Hospital in Glendale Heights.

33)    It is believed that Mrs. Braun will continue to be subjected to harm by this vast array of individuals should this court not intervene... Mrs. Williams has been in receipt of many calls of distress from her mother and from individuals who have placed Mrs. Williams in fear of the imminent death, drugging and pain inflicted upon her mother by these individuals which has occurred in the past and continues to occur not including verbalizations that appear as if they are based upon attempts of extortion with regard to Mr. Braun's estate but with regard to her mother's healthcare.

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

34)    Mrs. Williams truly believes that the defendants will do further harm to her mother who has lost over 30 pounds since being transferred to Alden Estates of Barrington and Long Grove and subsequent facility.

35)    In addition, the aforementioned demonstrates a serious breach of fiduciary duty by someone who appears to be managing the estate for not only himself but for other people who have not identified themselves.

36)    On April 16, 2008, Braun sent Williams an email still avoiding the unanswered questions pursuant to his managing of the estate of his late father.

37)    Acts of retaliation have increased against Williams, Mrs. Braun and her family, a family of a man who was loved and have not been able to grieve properly due to the acts of the defendants and others unknown at this time.  The decedent was a good natured man and a veteran who was very proud of his country.  It saddens this Plaintiff to seek no other recourse but to ask this court for a remedy on behalf of his wishes and to provide a better life for his former spouse then the atrocities it appears that have been arranged by the defendants and others unknown at this time.

38)    As of April 23, 2008, Braun still has failed and refused to send any accounting of his activities as executor and he has demonstrated certain behaviors that are hoping Williams drops this suit.

Wherefore, Plaintiffs prays for the following,

A.       Appoint an independent Trustee to fully review, do a thorough accounting and administer the estate of the decedent, Raymond E. Braun and provide said information to the beneficiaries which is their right as Defendant Braun has refused to do so after repeated demands.

B.       Appoint plaintiffs counsel in this litigation instanter due to the serious nature of the allegations and abuses as cited herein that can be construed as crimes against the constitution of the United States as it applies to the Plaintiffs and the other beneficiaries to the estate.

C.       An immediate restraining order upon defendants known and unknown at this time prohibiting them from psychologically torturing Mrs. Braun and the family of Patricia Williams and other beneficiaries any further…. As it appears that several people are behind these "preplanned moves" and acts of

United States District Court
Northern District of Illinois
Eastern Division
Case No. 08 C 1695

D.      Declaratory and injunctive relief prohibiting defendants from further harassing, intimidating, drugging, testing and subjecting Mrs. Braun as it has been difficult to visit due to conduct that seems to come in waves and at planned intervals by said defendants.

E.      Please remedy not only the acts of illegal and inhuman conduct towards the plaintiffs in this matter but provide a safeguard for the other elderly, disabled and vulnerable individuals in our society.

F.      Compensatory Damages.

G.     <u>Punitive Damages</u>.

H.     Further relief as this court seems just and proper.

Respectfully Submitted,

By:    *Patricia Williams*

Patricia Williams on behalf of herself and her mother, Barbara M. Braun and the other beneficiaries in this matter.

Patricia Williams
836 West Panorama Drive
Palatine, IL  60067
847/899-4029



## DURABLE POWER OF ATTORNEY FOR HEALTHCARE

To my family, friends, physicians, healthcare providers, community care facilities and any other person who may have an interest in my medical care:

I, Barbara M. Braun, being of sound mind, voluntarily create this Durable Power of Attorney for Healthcare.

### APPOINTMENT OF ATTORNEY-IN-FACT

If I become unable to make healthcare decisions for myself, I appoint the following person as my attorney-in-fact with authority to make healthcare decisions for me as I direct in this document.

Name: Patricia Williams

Address: 55 South Vail Avenue Apartment 804, Arlington Heights, Illinois, 60005

Day telephone: 847-394-0791

Evening telephone: 847-899-4029

### APPOINTMENT OF ALTERNATE ATTORNEY-IN-FACT

If that person is unable or unwilling to act as my attorney-in-fact for the purpose of making healthcare decisions, I appoint the following person to serve.

Name: Clarence G. Cruz III

Address: 55 South Vail Avenue, Arlington Heights, Illinois, 60005

Day telephone: 847-394-0791

Evening telephone: 847-052-0989

### WHEN EFFECTIVE

This Durable Power of Attorney for Healthcare shall:

- become effective when I sign it.

- not be affected by my subsequent disability or incompetence.

- remain in effect until my death, or until I revoke it.

### AUTHORITY I GRANT MY ATTORNEY-IN-FACT

I grant my attorney-in-fact full authority to enforce the instructions I have set out in the Declaration to which this Durable Power of Attorney For Healthcare is attached. However, I do not authorize my attorney-in-fact to act on my behalf for any other purpose. The

authority I grant to my attorney-in-fact shall include the authority to:

- hire and fire medical personnel.

- visit me in a hospital or other medical care facility.

- review and receive any information regarding my physical or mental health, including medical and hospital records.

- sign any releases or other documents required to obtain this information.

- sign any documents required to request, withdraw or refuse medical treatment or to be released or transferred from a hospital or other medical facility.

- sign any waiver or release from liability required by a hospital or physician.

**SIGNATURE**

Executed this ___6___ day of ___August___, __2007__

Signature: X _Barbara M. Brown_

Place: _Arlington Heights Cook County, Illinois_
         (City or County and State)

**DECLARATION OF WITNESS**

I am at least 18 years old. I declare that the person who signed or asked another to sign this document in my presence is personally known to me, has had an opportunity to read this document, and appears to be of sound mind and acting willingly and free from duress.

Witness: _Sean R. Williams_

Address: _5016 Milange St. N. Las Vegas NV 89031_

Durable Power of Attorney for Healthcare – 2

# DECLARATION

If I, Barbara M. Braun, become incapacitated and am unable to direct my physician as to my own healthcare, this statement of my wishes should be respected and followed.

These instructions shall prevail even if they conflict with the desires of my relatives, hospital policies, or principles of those providing my care.

I understand that Illinois law may not authorize me to direct that artificially-provided food or water be withheld. However, I request that all directions I set out in this document, including those that go beyond what Illinois authorizes, be respected and followed in keeping with my right to direct my own healthcare as guaranteed by the U.S. Constitution.

## DEFINITIONS

For purposes of this document:

- Terminal condition means an illness or injury for which there is no reasonable prospect of cure or recovery, death is imminent, and the application of life-sustaining treatment would only prolong the dying process.

- Permanent coma means a condition that, to a high degree of medical certainty, will last permanently, without improvement, in which thought, sensation, purposeful action, social interaction and awareness of self and environment are absent and for which initiating or continuing life-sustaining treatment, in light of the patient's medical condition, provides only minimal medical benefit.

- Life-prolonging procedure — also called death-delaying procedure — means any medical treatment, procedure or intervention that, in the judgment of the attending physician, would not be effective to remove the patient's qualifying condition or would serve only to prolong the dying process. These procedures can include, but are not limited to, assisted ventilation, renal dialysis, surgical procedures, blood transfusions and the administration of drugs and antibiotics.

- Artificially-administered food and water — also called nutrition and hydration — means supplying food and water through a conduit, such as a tube or intravenous line where the recipient is not required to chew or swallow voluntarily, including, but not limited to, nasogastric tubes, gastrotomies, jejunostomies and intravenous

infusions. Artificial nutrition and hydration does not include assisted feeding, such as spoon or bottle feeding.

• comfort care means any care that doctors consider necessary to make a patient comfortable or to alleviate pain. It does not include artificially-administered food and water.

**DIRECTING MEDICAL CARE**

Specifically, if I am diagnosed to have a terminal condition, I direct that:

• food and water be artificially administered, even if it would also have the effect of prolonging my life.

• all comfort care be provided, even if it would also have the effect of prolonging my life.

• all additional life-prolonging procedures be withheld except the following procedures, which I want provided: blood and blood products, cardio-pulmonary resuscitation (CPR), diagnostic tests and drugs.

**If I am diagnosed to be in a permanent coma, I direct that:**

• food and water be artificially administered, even if it would also have the effect of prolonging my life.

• all comfort care be provided, even if it would also have the effect of prolonging my life.

• all additional life-prolonging procedures be withheld except the following procedures, which I want provided: cardio-pulmonary resuscitation (CPR), diagnostic tests and drugs.

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

**SEVERABILITY**

If any of the specific directions in this document are held invalid,
that shall not affect other directions that can be given effect without
the invalid direction.

**SIGNATURE**

This document is made after careful reflection, while I am of sound
mind.

X Signed: _Barbara M. Braun_

_Arlington Heights, Cook County, Illinois_

City, County and State of Residence

Date: _8/6/07_

**STATEMENT OF WITNESSES**

The Declarant is personally known to me and I believe him or her to be
of sound mind. I saw the Declarant sign the Declaration in my presence
(or the Declarant acknowledged in my presence that he or she had signed
the Declaration) and I signed the Declaration as a witness in the
presence of the Declarant. I did not sign the Declarant's signature
above for or at the direction of the Declarant.

As the date of this instrument, I am 18 years of age or older and not
entitled to any portion of the estate of the Declarant according to the
laws of intestate succession or, to the best of my knowledge and
belief, under any will of Declarant or other instrument taking effect
at Declarant's death, or directly financially responsible for
Declarant's medical care.

Witness: _Sean R. Williams_

Address: _5016 Milange St. N. Las Vegas NV 89031_

Witness: _Clarence Cox_

Address: _55 S Vail et Apt 804, Arlington Hts, Il._
_60005_

**Advanced Pain Centers, S.C.**

2260 West Higgins Rd. • Suite 101 • Hoffman Estates, IL 60195 • 519 N. Cass Ave. • Suite 3SW • Westmont, IL
2940 Rollingridge Rd. • Suite 201 • Naperville, IL 60564 • 864 Streams Rd. • Suite 103 • Bartlett, IL 60103
Phone (847) 608-6620 • Fax (847) 742-8496 • Toll Free (877) 964-PAIN (7246)
www.painmngt.com

Date:    Thursday, February 22, 2007

Name     BARBARA BRAUN
Address: 55 S VAIL APT 311 ,
         ARLINGTON HEIGHTS, IL 60005

Rx:
         HOME HEALTH PT/OT/RN      #
         Zero

DX: COPD/spinal degeneration

please work on, PADL's/gait + mobility
assess need for adaptive equipment
• work on pulmonary endurance
                        monitor BP/pulse Dx
                                          tts

Duration:         [] May Substitute
Refills: 0        [ ] May Not Substitute

YOU HAVE BEEN INFORMED NOT TO STOP ANY MEDICATIONS        RNP is
WITHOUT PHYSICIAN APPROVAL                                Dr. Zion

Victoria Santucci, D.O.
IL State License:  036-095733

This document has an artificial watermark in background.
Rx void without security watermark

State of Illinois
Department of Human Services

Braun, BARBARA c/o Rosewood Care Center
(PERMANENT)

**Request for Cash Assistance - Medical Assistance - Food Stamps**  please print clearly

Last Name: ~~Braun~~          First Name: ~~Barbara~~    MI: _M_    Maiden Name: _KOLBERG_

Present Address: ~~#~~ 1800 W. Colonial Parkway

Apartment Number: Room 210, Inverness

City: _Palatine_ ; State: _IL_    Zip Code: _60067_    County: _Cook_

Are you homeless? ☐ Yes ☒ No

Mailing Address (if different from above)

Address: _55 South Vail Ave., Apt. 308_

City: _Arlington Hts_    State: _IL_    Zip Code: _60005_    County: _Cook_

Previous Address    _West Gunnison_

Address: _7171 ~~W Gunnison Apt 8~~_

City: _Harwood Heights_    State: _IL_    Zip Code: _60706_    County: _Cook_

Telephone number(s) where we may get in touch with you

Home: _847-358-4284_ Work: _____ Other: _847-899-4029_

Signature: _X Barbara M Braun_          Date: _10/04/81_

### Instructions to person(s) applying for Cash - Medical, and/or Food Stamp benefits

Please print all of your answers on the application form so that we can read and understand your answers.

You have the right to immediately file the application as long as this page is completed with your name, address and signature. The filing of this signed form starts the application processing timetable.

For your rights and responsibilities see page 7 and page 8 for food stamps and page 9 and page 10 for cash and/or medical.

If applying for food stamps, a decision on your eligibility will be made within 30 days. If determined eligible, Food Stamp benefits will be issued from the date the application is filed.

You may complete this form at home and mail or bring it to the Department of Human Services (DHS) office, or another member of the household or an adult who knows you may complete and return the form to us. If someone else completes this form for the household, they are to answer the questions for the person(s) they are applying for, not himself or herself.

44-2378B (R-3-07)

Illinois
Department of Human Services

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

Citizenship/Immigration Status

You must complete this section before you complete the rest of the application.

If you or any other person is not applying because you do not wish to provide information about your immigration status, you do not have to give us that information. The failure to provide immigration information will not affect processing the application for the remaining persons. However, any person who is applying for benefits for himself or herself has to provide information on their immigration status.

Are all persons U.S. citizens?   ☑ Yes   ☐ No

Complete the following information for any non-citizens who are applying for benefits. If you need more room, attach another sheet of paper.

| Name | Age | Arrival Date in the United States | Registration Number |
|------|-----|-----------------------------------|----------------------|
| 1. Barbara M. Braun | 74 | Born in the U.S. 1933 | |
| 2. | | 9/16/33 | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

If there are any persons who are not applying for food stamps and/or cash benefits because they do not wish to provide proof of their immigration status, please list them below. **We will only ask questions about their income and assets.**

| Name (Last) | (First) | (MI) | Name (Last) | (First) | (MI) |
|-------------|---------|------|-------------|---------|------|
| 1 | | | 4. | | |
| 2. | | | 5. | | |
| 3. | | | 6. | | |

The following questions are for informational purposes only. Answering the questions will not affect your benefits.

1. Are you Hispanic or Latino?   ☐ Yes   ☑ No

2. What is your race? (Select one or more)       ☐ American Indian/Alaskan Native       ☐ Asian
   ☐ Black or African American       ☐ Native Hawaiian or Other Pacific Islander       ☑ White

3. Does the adult member of your household who will usually discuss your case with DHS and/or HFS speak English fluently ☑ Yes ☐ No

4. Does the adult member of your household who will usually receive mail or written information from DHS and/or HFS read English fluently?
   ☑ Yes   ☐ No

If you checked either one of the above questions "No", what language do you speak? _____

**1 (PERMANENT)**

Illinois
Department of Human Services

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

1. How many people live with you (include yourself)? _____1_____

2. Are you or is anyone who lives with you blind?  ☐ Yes  ☒ No   Disabled?  ☒ Yes  ☐ No
   If yes, who: _____

3. Do you or does anyone who lives with you receive any kind of assistance from DHS now?  ☐ Yes  ☒ No
   If yes, who: _____

4. Have you or has anyone who lives with you received any kind of assistance from DHS before?  ☐ Yes  ☒ No
   If yes, who: _____

5. Have you or has anyone who lives with you recently applied for assistance in this or any other local office?  ☐ Yes  ☒ No
   If yes, who: _____

6. Are you or is anyone in your household pregnant?  ☐ Yes  ☒ No
   If yes, who: _____

Complete the rest of this page and page 4 if you are applying for food stamps .
We will interview you within 14 days - right away if you qualify for an expedited food stamp interview.

How many people who live with you buy and prepare food with you? (Include yourself)? _____1_____

Please complete the following:  ☐ I am able to come to an office interview.  ☒ I must be interviewed by phone because:

☐ hours of work or educational activities conflict with DHS office hours; or

☒ problems related to health, transportation or ongoing severe weather; or

☐ lack of necessary child care

I can be reached by phone Monday - Friday between 8:30 and 5:00 at:  847-358-4284   n 847-849-4029

Please complete the section below only if you are applying for food stamp benefits, have little or no income, and need food stamp benefits right away.

If your Food Stamp unit has little or no income right now, you may be able to receive food stamp benefits in a few days.  Your answers should include everyone who lives with you.

How much money do you or anyone who lives with you have in cash, checking, and/or savings?   $1800.00 *  (* see attached)

What is the monthly gross income (income of all sources before any deductions) for you and everyone who lives with you?  1,300 00

How much money have you or anyone who lives with you received or expect to receive from any source in the month of application?

$ 1,300 00   When? monthly   Source: Social Security

Is this a Food Stamp unit of migrant or seasonal farm workers?  ☐ Yes  ☒ No   If yes, did the income recently stop?  ☐ Yes  ☐ No

Are you or is anyone who lives with you expecting to receive more than $26 in income from a new source within the next 10 days?

☐ Yes  ☒ No

IL 444-2378B (R-3-07)

*Currently living* ~~in nursing yacility~~
*in nursing facility, etc* **1 (PERMANENT)**

Illinois
Department of Human Services

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

Complete this page if applying for food stamps.

### Shelter Costs

1. How much are you charged each month for your rent or mortgage? *830.00  832.00*

   (For mortgage include property taxes and insurance.)  Do you share this expense with anyone?  ☐ Yes  ☒ No

2. Are you receiving, applying, anticipating applying for Low Income Home Energy Assistance Program (LIHEAP), (in Chicago paid through CEDA)?  ☐ Yes  ☒ No

3. If No, are you billed separately from rent or mortgage for: Heat or air conditioning?  ☐ Yes  ☒ No

   Excess cost for heat or air conditioning?  ☒ Yes  ☒ No

   NOTE:  Air conditioning is a window air or central air conditioning unit.

   Does anyone outside of your FS unit pay or help pay for your housing costs?  ☐ Yes  ☒ No

   Does anyone outside of your FS unit pay your utility expenses?  ☐ Yes  ☒ No

If yes, please list the bills and the amounts paid: _____

Please complete the following information if you answered (NO), to question (2 or 3)  and are not billed for heat or air conditioning separately

| Expenses | Amount | How Often Due | Amount You Pay | Paid By Others |
|---|---|---|---|---|
| Electricity | 60.00 | monthly | | |
| Water and/or Sewerage | X | | | |
| Garbage | X | | | |
| Cooking Fuel *Rental Apartment* | 50.00 X | | | |
| Basic Phone Service (including cell phone) | 50.00 | monthly | | |
| Septic Tank Installation Maintenance | X | | | |
| Well Installation /Maintenance | X | | | |
| A Fee for Starting Utility Service | X | | | |
| (Specify what utilities you pay) | | | | |
| A Flat Amount for Utilities | X | | | |
| (Specify what utilities you pay) | | | | |
| Explain: | | | | |

*Plug in electrics.*

*Right now Nsg home cost is +4000.00 monthly, etc.*

*Flat fee for installing phone @ Nsg home $39.39*

...nois
...artment of Human Services

**1 (PERMANENT)**



## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly
**You must complete this page for all programs**

| What is your full name and birthdate and the full name and birth dates of all the people who live with you? Include people who are temporarily absent from the home (do not use nicknames). Also include people who live with you for whom you are not requesting assistance. List in this order: Yourself / Your husband or wife / Children / Other relatives / Non-relatives | Enter one of the words below to show the relationship of each person to you. Self / Son / Daughter / Grandson / Granddaughter / Stepbrother / Stepdaughter / Stepson / Stepmother / Stepfather / Niece / Related Some Other Way / Not related. This person's relationship to me is: / Husband / Wife / Father / Mother / Sister / Brother / Aunt / First Cousin / Nephew | A determination of your eligibility under any of the programs administered by the Department will be made unless you do not want to be considered for a particular program(s). Indicate below what type of benefits you do or do not want to apply for by checking "Yes" or "No". | | Enter the social security number of each person requesting benefits. |
|---|---|---|---|---|
| **Person Making Application** First Name: *Barbara* Middle Initial: *m.* Last Name: *Braun* 1. Birthdate: *9-16-33* | Self | Cash    ☐ Yes  ☒ No  Medical  ☒ Yes  ☐ No  Food stamps  ☒ Yes  ☐ No | | |
| First Name: _____ Middle Initial: _____ Last Name: _____ 2. Birthdate: _____ | | Cash    ☐ Yes  ☐ No  Medical  ☐ Yes  ☐ No  Food stamps  ☐ Yes  ☐ No | | |
| First Name: _____ Middle Initial: _____ Last Name: _____ 3. Birthdate: _____ | | Cash    ☐ Yes  ☐ No  Medical  ☐ Yes  ☐ No  Food stamps  ☐ Yes  ☐ No | | |
| First Name: _____ Middle Initial: _____ Last Name: _____ 4. Birthdate: _____ | | Cash    ☐ Yes  ☐ No  Medical  ☐ Yes  ☐ No  Food stamps  ☐ Yes  ☐ No | | |
| First Name: _____ Middle Initial: _____ Last Name: _____ 5. Birthdate: _____ | | Cash    ☐ Yes  ☐ No  Medical  ☐ Yes  ☐ No  Food stamps  ☐ Yes  ☐ No | | |
| First Name: _____ Middle Initial: _____ Last Name: _____ Birthdate: _____ | | Cash    ☐ Yes  ☐ No  Medical  ☐ Yes  ☐ No  Food stamps  ☐ Yes  ☐ No | | |

**Please attach an additional page if there are more persons**

I-2378B (R-3-07)

Illinois
Department of Human Services

**1 (PERMANENT)**



## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

Complete this page if you are applying for medical benefits

**1.**

| | Person #1 | Person #2 | Person #3 |
|---|---|---|---|
| Is this person covered by health or hospital insurance (including Medicare) now or in the last three months?  If yes, complete the following. | ☑ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| a. Date Coverage Began (month/year) | a. 3/1999 | a. | a. |
| b. Has Insurance Ended?  If yes, why? Date Coverage Ended (Month/Year) | ☐ Yes ☑ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| c. Name of Insurance Company | b. State Farm  NO | b. | b. |
| d. Name of Policyholder | c. | c. | c. |
| e. Policyholder's SSN (optional) | d. Barbara Braun | d. | d. |
| f. Employer Name and Phone Number | e. | e. | e. |
| g. Policy Number and Group Number | f. N/A | f. | f. |
| | g. | g. | g. |

2. Is any adult, parent, stepparent, spouse or pregnant woman named on this form currently employed?                              ☐ Yes ☑ No

If yes, complete the following and **attach proof** for the last month.  Is anyone self-employed?        ☐ Yes ☐ No

Name of Person: _____

Employer Address: _____ Employer: _____

Number of Hours Worked Weekly: _____   Amount Paid (including tips) before taxes $ _____ Employer Phone: _____

Name of Person: _____

Employer Address: _____ Employer: _____

Number of Hours Worked Weekly: _____   Amount Paid (including tips) before taxes $ _____ Employer Phone: _____

How Often Paid: _____

3. Does anyone named on this form GET money from any source other than employment (such as Social Security, child support, spousal support, rental property, unemployment benefits, pensions, trusts)?           ☑ Yes ☐ No

If yes, complete the following and **attach proof** for the last month.

Name of Person: Barbara M Braun   Source: Social Security   Monthly Amount $ 1300.00

Name of Person: _____ Source: _____ Monthly Amount $ _____

If this income is from rental property, is this person receiving the income also the property manager?   ☐ Yes ☐ No

4. Does anyone named on this form PAY child support or spousal support?    ☐ Yes ☑ No

If yes, complete the following and **attach proof** for the last month.

Name of Person: _____ Source: _____ Monthly Amount $ _____

Name of Person: _____ Source: _____ Monthly Amount $ _____

5. Does anyone named on this form PAY for day care so they can work?    ☐ Yes ☑ No

If yes, complete the following and **attach proof** for the last month.

Name of child in Day Care: _____   Name of Care Giver: _____

Name of child in Day Care: _____   Name of Care Giver: _____

Person paying Day Care: _____

Relationship of care giver to child (if any): _____   Monthly Amount $ _____

L444-2378B (R-3-07)

1 (PERMANENT)



~~~~~~~nois
~~~~partment of Human Services

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

### All Kids/Family Care Insurance Rebate Form

A rebate is a monthly amount we will pay you if you already pay for health insurance for yourself, your spouse or your children.  If you choose to get rebates, you will use your current insurance card to get health care.
Only families who have health insurance can get rebate payments.  Also, only families with a certain amount of income can get rebates.

> Have the policyholder complete Part A;
> Have the policyholder's employer or personal insurance agent complete Part B and return it to you; and
> Return the completed pages to your local office.

**Part A -** The main person whose name is on the insurance must sign this part of the form.  Often this person is called the policyholder.  This person may get the health insurance from a job.

Policyholder's Last Name: __BRAUN__          Policyholder's First Name: __BARBARA__

Home Address: __55 SOUTH Vail Ave.__          Apartment Number: ~~3B~~ 308

City: __ARLINGTON HTS__      State: __IL__      Zip Code: __60005__ 308

Social Security Number: _____      Telephone Number: __847-358-4284__

(We must have the Social Security Number so we can pay the rebate to this person.)

Tell us the names of family members you want a rebate for: __SELF__

I agree to call the All Kids/Family Care Unit right away if this health insurance ends, someone is added or taken off the health insurance, the amount paid for the insurance changes, covered benefits change or someone else becomes the policyholder.

I authorize my employer, plan administrator and insurance company to provide the information requested in PART B for the purpose of determining whether I qualify for All Kids/Family Care.  I also authorize my employer, plan administrator and insurance company to verify my coverage and any of the information below for any time when I get All Kids/Family Care Rebate.

Signature of Employee/Policyholder: __X Barbara M Braun__

**Part B -** This part of the form must be completed by the employer providing the health insurance or the insurance agent.

**Note to Employer Insurance Agent:**  The employee/policy holder named above on this form is applying for help to cover the cost of their family's health insurance premiums. Please assist them by completing the information below and returning the form to the employee/policy holder as soon as possible. (As used below, "employee" applies to an employee or private policyholder.)  For help in completing this form, call toll-free 1-877-805-5312.

Employer (if employer policy): _____

Employer address: _____

City: _____      State: _____      Zip Code: _____

Person completing this form: _____      Phone: _____      Fax: _____

Insurance Company: _____      Policy Number: _____      Group Number: _____

What benefits are covered? Check all that apply:  ☐ Physician Services   ☐ Hospital Inpatient Services

Amount of premium paid by employee: $ _____ .  (Include amounts paid for dental, vision, and prescription coverage.)

Premiums are paid: ☐ weekly ☐ every 2 weeks ☐ twice a month ☐ monthly ☐ every 2 weeks ☐ quarterly ☐ semi-annually ☐ annually

Persons covered by the employee premium contribution: _____

Does the employer pay 100% of the cost of the employee's coverage:  ☐ Yes   ☐ No

If No, how much of the amount listed above is for coverage of the employee only (single rate)?

$ _____ (Include amounts paid for dental, vision, and prescription coverage.)

Enrollment Period of Policy: _____

Date of Premium Listed Above Began/Begins: _____

Date of Next Scheduled Change in Premium: _____

Authorized Signature of Employer/Agent: _____      Date: _____

Return the completed rebate form to the employee for submission with the All Kids/Family Care application.  Need Help?  Visit allkidscovered.com or call toll free 1-866-ALL-KIDS (1-866-255-5437) if you use a Text Telephone, call 1-877-204-1012.

847-961-5568



Illinois
Department of Human Services

# Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

Read, complete and sign the next two pages if you want food stamp benefits

Federal law requires a social security number (SSN) for every member of your household who is applying for food stamp benefits. We do not require a social security number for any member of your household who is not eligible for the food stamp program or who does not wish to apply. If you or any member of your household wants to apply for food stamp benefits, but does not have a SSN, we can help you to apply for one. The SSN will be used in the administration of the food stamp program to check the identity of household members, prevent duplicate participation, and to facilitate making mass changes. The SSN will also be used in computer matching and program reviews or audits and to make sure the household is eligible for food stamp benefits, other federal assistance programs, and federally assisted state programs, such as school lunch, TANF, and Medicaid. This may result in criminal or civil action or administrative claims against persons fraudulently participating in the food stamp program.

At this application you must report:

Child care expenses
Utility expenses

You must report **and** verify:

Rent or mortgage payment, property taxes and insurance
Medical expenses
Child support paid to a non-FS Unit member

Child support payments are subject to verification by computer matching with the records of the Division of Child Support Enforcement.

Failure to report or verify above expenses will be seen as a statement by your FS Unit that you do not want to receive a deduction for the unreported expenses.

## Approved Representative

Someone other than the FS unit head can complete the application process or use the food stamp benefits to buy food for the FS unit. If such a person is authorized, write his or her name below. If an approved representative completes and signs this application, written authorization from the FS unit is required.

Name _Patricia Williams_  Address: _836 W. Panorama Drive Apt 313 Palatine IL 60067_  Telephone Number: _847-963-1047_

## Penalty Warning

The information on this form is subject to verification by federal, state, and local officials. If any information is found to be inaccurate, you may be denied food stamp benefits, and/or be subject to criminal prosecution for knowingly providing false information.

Individuals found guilty in a court of law of trading food stamp benefits for firearms, ammunition, explosives, or controlled substances will be barred from the food stamp program: 1) 24 months for the first offense and permanently for the second offense involving the sale of a controlled substance for food stamp benefits, and 2) permanently for the first offense involving the sale of firearms, ammunition, or explosives for food stamp benefits.

A person found guilty of trafficking food stamp benefits will be permanently barred from the food stamp program.

A person who is found to have made a fraudulent statement or representation about identity and residence to get multiple benefits at the same time will be barred for 10 years.

Persons who are fleeing felons or probation/parole violators are ineligible for food stamp benefits.

Any member of your FS unit who intentionally breaks any of the following rules can be barred from the food stamp program for 12 months after the first violation, 24 months for the second violation, and permanently for the third violation. The person can also be fined up to $250,000, imprisoned up to 20 years, or both. The person may also be subject to further prosecution under other applicable federal laws.

Do not give false information or hide information to get or continue to get food stamp benefits.

Food stamp benefits may not be traded or sold.

Food stamp benefits may be used for food products only and may not be used to buy ineligible items, such as alcoholic drinks and tobacco.

Do not use someone else's food stamp benefits for your FS unit.



Illinois
Department of Human Services

**Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly**

### Client's Rights and Responsibilities - Food Stamps (continued)

I understand the questions on this application and the penalty for hiding or giving false information or breaking any of the rules listed in the penalty warning. By signing, I swear that under penalty of perjury the answers are true and correct to the best of my knowledge.

I understand that documents may have to be provided to prove what I've said. I agree to do this. If documents are not available, I agree to give the name of a person or organization the food stamp office may contact to obtain the necessary proof.

I understand that while my application is pending and once it is approved, I must report any changes in my FS unit's circumstances within 10 days of the date the change occurs, unless otherwise notified. If I have any doubt about whether to report a change, I will ask my Human Services caseworker.

I understand that if approved for food stamp benefits and I receive more benefits than I am entitled to, whether it be an error on my part or an agency error, the amount of overpaid benefits is subject to recoupment/recovery.

Your Signature: _____X Barbara M Braun_____    Date: _____10-9-07_____

You are:          ☑ Head of FS Unit or a FS Unit member
Check One         ☐ The FS Unit's approved representative

Witness if you signed with an X: _____

A fair hearing may be requested either orally or in writing if there is disagreement with any action taken on this case. The FS unit's case may be presented at the hearing by any person chosen by the FS unit.

In accordance with Federal Law and U.S. Department of Agriculture (USDA) and U.S. Department of Health and Human Services (HHS) policy, this institution is prohibited from discriminating on the basis of race, color, national origin, sex, age, disability, religion or political belief.

To file a complaint of discrimination, contact the Department of Human Services (DHS), USDA, or HHS. Write DHS at, Department of Human Services, Bureau of Civil Affairs, 401 South Clinton St, 4th Floor, Chicago, Illinois, 60607. Write USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W. Washington, D.C. 20250-9410, or call (800) 795-3272 (Voice) or (202) 720-6382 (TTY). Write HHS, Director, Office for Civil Rights, Room 506-F, 200 Independence Avenue, S.W. Washington, D.C. 20201 or call (202) 619-0403 (voice) or (202) 619-3257 (TTY). DHS, USDA and HHS are equal opportunity providers and employers.

Illinois
Department of Human Services

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

**Read and sign the next 2 pages if you want cash or medical benefits**

I understand that by signing this application form, I consent to any investigation made by the Department to verify or confirm the information I have given or any other investigation made by them in connection with my request for public assistance. I understand that I must cooperate in these efforts to verify information.

When I file an application for cash or medical assistance, a determination of my eligibility under any of the programs administered by the Department will be made unless I do not want to be considered for a particular program(s). If I do not want to be considered for a particular program, the Department will not consider my eligibility for that program(s).

I agree to inform the agency within 10 days of any change in my household's size, income, property, living arrangements, school attendance, or address.

I understand that if approved for cash benefits, and I receive more benefits than I am entitled to, whether it be an error on my part or an agency error, the amount of overpaid benefits are subject to recoupment/recovery.

I understand that if I am mentally and physically able to apply and I want someone else to apply for cash and/or medical benefits for me, I must attach a written statement that gives the person permission. The statement must include the person's name, address, and phone number. The statement must say that I am still responsible for the information provided by the person .

The Department secures and uses information about all clients through the income and eligibility verification system. This includes such information as receipt of social security benefits, unemployment insurance, unearned income (such as interest and dividends) and wages from employment. Any information obtained will be used in determining eligibility for assistance and the amount of assistance provided for all programs. When discrepancies are found, verification of this information may be obtained through contacts with a third party, such as employers, claims representatives, or financial institutions. This information may affect your eligibility for assistance and the amount of assistance provided.

The information provided on this form will be subject to verification by Federal, State, and Local officials. If any information is found to be inaccurate, I may be denied cash benefits and/or the MediPlan Card.

I understand that anyone who knowingly misuses the health benefits card issued by the State of Illinois may be committing a crime.

I understand that if I am not satisfied with the action taken on my application that I have the right to a fair hearing. I understand that I can ask for a fair hearing by getting in touch with the office where I applied or by writing to: the Bureau of Assistance Hearings, 401 South Clinton Street, Chicago, Illinois 60607, or by calling 1-800-435-0774.

As a condition of eligibility, if I am approved for TANF Cash and/or medical assistance for myself and my children, I understand that I may be required to cooperate with child support enforcement. Cooperation includes establishment of paternity and/or support enforcement and modification of child support orders. I assign and give all my rights, title and interest of child support and medical support to the Illinois Department of Healthcare and Family Services for as long as I receive TANF Cash and/or medical assistance. I understand and agree that any child support payments paid through the clerk of the circuit court and through the State Disbursement Unit (SDU) may be forwarded to the Illinois Department of Healthcare and Family Services as long as I receive TANF Cash.

I understand that if I apply for TANF Cash and/or medical assistance for my children only, I am not required to cooperate with child support enforcement, but I may request services.

If I am approved for TANF Cash and/or medical benefits for myself and my children, I give my right to collect medical support payments and third party payments to the State of Illinois for medical care for members of my family in the assistance unit unless I am declared exempt for a good cause.

All information related to the establishment of paternity and child support enforcement has been provided to the best of my knowledge.

If I am approved for Aid to the Aged, Blind, or Disabled for cash and medical assistance (AABD Cash) I understand that the Department may have the right to place a lien on real property owned by me to the extent of assistance the Department pays out in my behalf.

State of Illinois
Department of Human Services

**1 (PERMANENT)**

## Request for Cash Assistance - Medical Assistance - Food Stamps  please print clearly

If my application is approved, I give the State of Illinois the right to recover under the terms of any private or public health care coverage any amount for which I or a member of my family may be eligible.

I understand that the State of Illinois will release information concerning medical services I have received for any purpose authorized by law.

I understand that if the children I am applying for are approved for Kidcare Share or Kidcare Premium, I am responsible for paying the appropriate premiums and copayment amounts.

I understand that if the children I am applying for are approved for Kidcare Rebate, the State of Illinois is not responsible for additional premiums, deductibles or copayments required by the employer's or private health insurance policy.

I declare under penalty of perjury, that the statements I have made regarding the citizenship or immigration status of each person applying for medical benefits are true and correct.

I understand that the immigration status of each person applying for benefits who is not a citizen of the United States will be verified. This will require the disclosure to Bureau of Citizenship and Immigration Services(BCIS) of certain identifying information which I have provided. The information received from BCIS may affect eligibility for benefits.

[ ] If this application is initiated by someone else in behalf of the applicant, they must sign below.

I understand that if I have given false information or intentionally failed to disclose information, I may be subject to prosecution, criminal, civil or both. I certify under the penalty of perjury that the information I have provided on this application from is the truth to the best of my knowledge.

Signature of Approved Representative: _Patricia Williams_    Relationship: _daughter_

Home address: _836 W. Panorama D. #313 Palatine IL_    Apt. No. _____

Telephone Number: _847-963-1047_    _60067_

---

I understand that if I have given false information or intentionally failed to disclose information, I may be subject to prosecution, criminal, civil or both. I certify under the penalty of perjury that the information I have provided on this application form is the truth to the best of knowledge.

---

[ ] Sign your name or make your mark

Applicant: X _Barbara N Braun_    Date: _10/4/07_

Spouse: _N/A_    Date: _____

[ ] If you have made your mark (x) instead of signing your name, one witness must sign here:

Signature of witness: _____    Date: _____

[ ] Application based on blindness must attest by two witnesses:

Signature of witness: _____    Date: _____

Signature of witness: _____    Date: _____

For GA applicants only

"The Department of Human Services is requesting your social security number and the number(s) of any other person(s) for whom you are applying in the administration of the general assistance (GA) program. Providing your number or the number(s) of any other person(s) for whom you are applying or receiving assistance is voluntary. If you do not wish to provide the social security number(s) requested, this will not affect your assistance. The Department will only use the social security number(s) you provide in the administration of the GA program as described above."

In accordance with Federal Law and U.S. Department of Agriculture (USDA) and U.S. Department of Health and Human Services (HHS) policy, this institution is prohibited from discriminating on the basis of race, color, national origin, sex, age, or disability, religion or political belief.

To file a complaint of discrimination, contact the Department of Human Services (DHS), USDA, or HHS. Write DHS at, Department of Human Services, Bureau of Civil Affairs, 401 South Clinton St, 4th Floor, Chicago, Illinois, 60607. Write USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W. Washington, D.C. 20250-9410, or call (800) 795-3272 (Voice) or (202) 720-6382 (TTY).   Write HHS, Director, Office for Civil Rights, Room 506-F, 200 Independence Avenue, S.W. Washington, D.C. 20201 or call (202) 619-0403 (voice) or (202) 619-3257 (TTY).  DHS, USDA, and HHS are equal opportunity providers and employers.

IL444-2378B (R-3-07)

**Northwest Community Hospital** • 800 West Central Rd • Arlington Heights, IL 60005 • www.nch.org

Thank you for choosing Northwest Community Hospital for your healthcare needs. The items listed below are for *Inpatient Services* performed at *Northwest Community Hospital*.

| DATES OF SERVICE | STATEMENT DATE | DUE DATE |
|---|---|---|
| 10/05/07 10/09/07 | 10/13/07 | |

| ACCOUNT NUMBER | PATIENT'S NAME |
|---|---|
| 51039467 | BRAUN , BARBARA |

| DATE | QUANTITY AND SERVICE DESCRIPTION | AMOUNT |
|---|---|---|
| | CRITICA  1DAYS@  2110.00 | 2110.00 |
| | SEMI-PR  3DAYS@  1170.00 | 3510.00 |
| | EMERGENCY ROOM | 1319.00 |
| | IMAGING/X-RAY | 2934.00 |
| | LAB | 3084.00 |
| | PHYSICAL THERAPY | 178.00 |
| | OCC THERAPY | 178.00 |
| | PHARMACY | 2542.93 |
| | MED/SUR SUPPLIES | 2340.00 |
| | RESP/PULMONARY | 2339.00 |
| | CARDIOLOGY | 186.00 |
| | | |
| | BALANCE FORWARD | 158.00 |

This is a summary of your charges. Because this is the only summary you will receive, please retain for your records. We are billing MEDICARE as your primary insurance for your inpatient stay. Additional billing may be necessary for any charges not posted when this statement was produced.

| | | |
|---|---|---|
| **TOTAL ACCOUNT BALANCE** | | 20878.93 |

| BILLING QUESTIONS?    OFFICE HOURS | PAGE # | **Pay This Amount** ➡ | DO NOT PAY |
|---|---|---|---|
| 847-618-4747  8:30 AM - 4:00 PM | 1 of 1 | | |

1

**To pay your bill online, visit www.nch.org**

Please see reverse side for additional information.

*Please return bottom portion in supplied envelope.

**MAILED FROM:**



**Northwest Community Hospital**
800 West Central Road
Arlington Heights, IL  60005

☐ Please enter address or insurance changes on back and check box.
**Please write your account number on your check.**

**ADDRESSEE:**

663
BARBARA M BRAUN
55 S VAIL AVE APT 308

ARLINGTON HEIGHTS IL 60005-1869

| IF PAYING BY CREDIT CARD PLEASE CHECK BOX AND FILL OUT BELOW | | |
|---|---|---|
| ☐ **VISA** | ☐ | ☐ | ☐ |
| CARD NUMBER | | EXP DATE |
| SIGNATURE | | AMOUNT PAID |

| ACCT # | DUE DATE | AMOUNT DUE |
|---|---|---|
| 51039467 | | DO NOT PAY |

| INSURANCE COMPANY NAME | POLICY# |
|---|---|
| MEDICARE PART A | 325264055A |
| MEDICARE B PROFEES | 325264055A |
| COMMERCIAL INSURANCE | HB5482121313 |

0000000000000510394679

## FINANCIAL INFORMATION AND ASSISTANCE

On your behalf, Northwest Community Hospital bills primary and secondary insurance plans if you provided us with this information at the time of registration. If the insurance listed on the attached statement is incorrect, or if you need an itemized statement, please call us. You are ultimately responsible for payment of all charges if your insurance does not pay. If you do not have insurance coverage, please remit payment in full by the due date stated. If you need help in meeting your hospital bill obligations, you may qualify for financial assistance through Northwest Community Hospital. Please contact our office at 847-618-4747. For further explanation and application forms that can be dowloaded, you can also visit www.nch.org under Patient and Visitor Information and click on "Patient Financial Assistance".

*Por favor comuniquese con nuestra oficina de asuntos comerciales llamando al 847-618-4747 para obtener informacion adicional.*

### ONLINE BILL PAYMENT

For your convenience, online bill payment is available. Visit www.nch.org under Patient & Visitor Information and click on Pay Your Hospital Bill Online.

### BILLING FOR SEPARATE SERVICES

Depending on the services provided, you may receive separate bills from other health care professionals who provided services to you at Northwest Community Hospital or Day Surgery Center. For example, charges for emergency room physicians, anesthesiologists, radiologists, pathologists, cardiologists, surgeons and attending physicians are billed separately. These separate services may not be contracted through your HMO or PPO. For your convenience, we are listing several frequently requested numbers:

| | | | |
|---|---|---|---|
| Anesthesia Associates | 847-573-9100 | Arlington Ridge Pathology | 630-874-2710 |
| Northwest Radiology Associates | 312-649-3005 | Professional Cardiac Services | 630-874-2755 |
| Best Practices of SC | 866-402-4367 | | |

### PATIENT SERVICES CENTER

The Patient Services Center offers a faster, easier way to access the services you need, including financial counseling, bill payment, X-ray and medical records pick-up, among others. It's located in the Hospital's North Pavilion (near Entrance 2). Walk-ins are welcome. To ensure your request is ready when you arrive, please call 847-618-3200, 24-48 hours in advance. Hours: Monday-Friday, 8am to 7pm. For directions, visit www.nch.org under Patient and Visitor Information click on "Patient Services Center".

### IN THE MEANTIME...

Please call our customer service specialists at 847-618-4747 if you have any questions. You may also fax us at 847-618-4719. We are available to assist you Monday-Friday, from 8:30am to 4:00pm.

*If you have updated insurance or address information please provide it below so we can update your records.*

| GUARANTOR NAME | DAYTIME PHONE # ( ) | HOME PHONE # ( ) |
|---|---|---|
| GUARANTOR'S ADDRESS | CITY | STATE    ZIP |

| GUARANTOR'S ADDRESS | PATIENT'S RELATIONSHIP TO INSURED | SELF   SPOUSE   CHILD   OTHER |
|---|---|---|

| INSURANCE COMPANY NAME | PHONE # ( ) |
|---|---|
| INSURANCE COMPANY BILLING ADDRESS | |
| POLICY HOLDER'S NAME | BIRTHDATE  /  / |
| POLICY AND GROUP # | POLICY EFFECTIVE DATE |
| EMPLOYER | PHONE # ( ) |

Northwest Community Hospital
PO Box 95698
Chicago IL 60694-5698

Bravo Care of Inverness, Inc.

11701 Borman Drive
Suite 315
St. Louis, MO 63146-4194
847-776-4700

*Rosewood*
CARE CENTER

**STATEMENT**

Page: 1

| Account # | Date |
|---|---|
| 12235 | 10/24/2007 |

| Due Date | Amount Due | Amount Enclosed |
|---|---|---|
| 11/15/2007 | $11,459.00 | |

Braun, Barbara
836 W Panorama #313

Palatine, IL 60067

*Rehab*

| Resident Name |
|---|
| Braun, Barbara |

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR REMITTANCE

Braun, Barbara
Braun, Barbara

Bravo Care of Inverness, Inc.

10/24/2007

| Date From | Through | Description | Units | | Unit Cost | Gross Charges | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | | RESIDENT RESPONSIBILITY | | | | | | | |
| | 09/30/2007 | Balance Forward | | | | | | | $9,846.00 |
| 09/26/2007 | 09/26/2007 | Payment Received -Thank You | | | | | | -5,100.00 | $4,746.00 |
| 10/01/2007 | 10/31/2007 | Routine/Daily Care | | | | -800.00 | | -800.00 | $3,946.00 |
| 10/05/2007 | 10/08/2007 | Routine/Daily Care | 4 | Day | 137.00 | 548.00 | 548.00 | | $4,494.00 |
| 11/01/2007 | 11/30/2007 | Routine/Daily Care | 30 | Day | 217.00 | 6,510.00 | 6,510.00 | | $11,004.00 |
| 09/12/2007 | 09/12/2007 | 18"w/c | | | | 80.00 | 80.00 | | $11,084.00 |
| 09/13/2007 | 09/13/2007 | nebulizer | | | | 50.00 | 50.00 | | $11,134.00 |
| 09/17/2007 | 09/17/2007 | e-tanks | 2 | Each | 25.00 | 50.00 | 50.00 | | $11,184.00 |
| 09/18/2007 | 09/18/2007 | e-tanks | 4 | Each | 25.00 | 100.00 | 100.00 | | $11,284.00 |
| 09/20/2007 | 09/20/2007 | e-tanks | 4 | Each | 25.00 | 100.00 | 100.00 | | $11,384.00 |
| 09/24/2007 | 09/24/2007 | e-tank | | | | 25.00 | 25.00 | | $11,409.00 |
| 09/25/2007 | 09/25/2007 | e-tank | | | | 25.00 | 25.00 | | $11,434.00 |
| 09/27/2007 | 09/27/2007 | e-tanks | | | | 25.00 | 25.00 | | $11,459.00 |

\* Accounts that are ten (10) days past due shall be assessed interest at 1.5% of the unpaid balance per month.
\* Mail **PAYMENTS ONLY** in the enclosed envelope.
\* Mail **CORRESPONDENCE ONLY**: 11701 Borman Dr., Suite 315, St. Louis, MO 63146 \*

| | Current | Over 31 | Over 61 | Over 92 | Over 123 | TOTAL |
|---|---|---|---|---|---|---|
| **TOTAL RESIDENT RESPONSIBILITY** | 11,004.00 | 455.00 | | | | **$11,459.00** |

The following third party payers have been or will be billed, as applicable. The AMOUNT DUE listed on the statement does not include the charges billed to third party payers.
You are financially responsible for any charges denied by third party payers in accordance with applicable laws.

| Date From | Through | Third Party Payer | Description | Total Charges | Discount | Net Charges |
|---|---|---|---|---|---|---|
| | | | | | | |

(E)

7/12/07

Will R E Brun

Patty    50 %
Ray      30 %
Mike     20 %

After Each of Patty's kids
receive $15,000 each

Lee, Sean, Ashley, & Gregory

Based on need and attention
to parents.

Kids + grand kids to help
Barbara as needed.

R E Brun

...may have any interest at the time of my death for such
period as my executor shall determine;

34375_1.DOC

# WILL

## OF

## RAYMOND E. BRAUN



I, Raymond E. Braun, of Des Plaines, Illinois, make this my Will and revoke all prior wills and codicils.

### ARTICLE 1
### Introduction

1.1    **Family.** I am not currently married. I have three children now living, namely: ~~Patricia E. Williams; Raymond M. Braun and Michael J. Braun.~~

### ARTICLE 2
### Gifts to Living Trust

I give my tangible personal property and the rest of the property I own at my death (excluding any property over which I have a power of appointment) to the trustee of the RAYMOND E. BRAUN REVOCABLE TRUST, executed on the same date as and immediately prior to the execution of this Will, as amended or restated from time to time, and as in effect at my death (my "Living Trust"), to be held and administered as provided therein. My executor may distribute directly to any beneficiary under my Living Trust any property which, if distributed to the trustee, would then be distributed to the beneficiary.

### ARTICLE 3
### Executor

3.1    **Executor.** I name Raymond M. Braun as executor hereunder. If Raymond M. Braun at any time fails or ceases to act, I name Patricia E. Williams and Michael J. Braun (singularly and successively in the order named) as successor executor.

3.2    **Waiver of Surety.** No security, surety or bond shall be required of my executor. If permitted by law and if not inconsistent with the best interests of the beneficiaries as determined by my executor, the administration of my estate shall be independent of the supervision of any court.

3.3    **Powers of Executor.** I give my executor power, without authorization of any court:

(a)    **Retention.** To retain any property regardless of diversification and regardless of whether the property would be considered a proper estate investment; to continue or to permit the continuation of any business, incorporated or unincorporated, which I may own or in which I may have any interest at the time of my death for such period as my executor shall determine;

(b)     **Sale**. To sell at public or private sale, contract to sell, grant options to buy, convey, transfer, exchange, or partition, any real or personal property of my estate for such price and upon such terms as my executor sees fit;

(c)     **Real and Tangible Personal Property**. To make leases and subleases and grant options to lease, although the terms thereof commence in the future, to operate, maintain, improve, rehabilitate, alter, demolish, abandon, release or dedicate any real or tangible personal property, and to develop or subdivide real property, grant easements and take any other action with respect to real or tangible personal property that an individual owner thereof could take;

(d)     **Borrowing**. To borrow money from any lender (including my executor individually), extend or renew any existing indebtedness, and mortgage or pledge any property;

(e)     **Investing**. To invest in bonds, common or preferred stocks (including securities of any corporate fiduciary or of any affiliated corporation), notes, options, common trust funds, mutual funds, shares of any investment company or trust, or other securities, partnership interests, general or limited, joint ventures, limited liability companies, or other property of any kind, regardless of diversification and regardless of whether the property would be considered a proper estate investment;

(f)     **Distribution; Determination of Value**. To distribute my estate in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different property or disproportionate interests to the beneficiaries, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for income tax purposes, and to determine the value of any property so allocated or distributed. No action taken by my executor pursuant to this subparagraph shall be subject to question by any beneficiary;

(g)     **Rights as to Securities**. To have all the rights, powers and privileges of an owner of securities, including, but not limited to, the powers to vote, give proxies, and pay assessments, to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations and, incident to such participation, to exercise or sell stock subscription or conversion rights;

(h)     **Conservation of Assets**. To take any action that an individual owner of an asset could take to conserve or realize the value of the asset and with respect to any foreclosure, reorganization or other change with respect to the asset;

(i)     **Delegation**. To employ agents, attorneys and proxies of all types (including any firm in which a relative of mine or his or her spouse is a partner, associate, employee or is otherwise affiliated) and to delegate to them such powers as my executor considers advisable;

(j)    **Principal and Income**. To determine in cases not covered by statute the allocation of receipts and disbursements between income and principal, to establish out of income and credit to principal reasonable reserves for depreciation, depletion and obsolescence, to amortize out of income any premium paid for interest-bearing obligations;

(k)    **Dealing with Fiduciaries**. To deal with, purchase assets from, or make loans to, the fiduciary of any trust made by me or a trust or estate in which any beneficiary under my Living Trust has an interest, even though my executor is the fiduciary, and to retain any assets or loans so acquired, regardless of diversification and regardless of whether the property would be considered a proper estate investment; to deal with a corporation acting as executor under this Will or a parent or affiliate of the corporation; to deal with the fiduciary of any other estate, trust, or custodial account, even though the fiduciary is my executor;

(l)    **Compromising Claims**. To litigate, compromise, settle or abandon any claim or demand in favor of or against my estate;

(m)    **Nominee Arrangements**. To hold any asset in the name of a nominee, in bearer form or otherwise, without disclosure of any fiduciary relationship;

(n)    **Liability Insurance**. To purchase liability and casualty insurance of any kind for the protection of the estate, including comprehensive liability insurance;

(o)    **Environmental**. To inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, trust or other entity) for environmental conditions or possible violations of environmental laws, to remediate environmentally-damaged property or to take steps to prevent environmental damage in the future, even if no action by public or private parties is currently pending or threatened, to abandon or refuse to accept property which may have environmental damage, and to expend estate funds to do the foregoing, and no action or failure to act by my executor pursuant to this subparagraph shall be subject to question by any beneficiary;

(p)    **Disclaimers**. To disclaim any property or interest on my behalf without court approval;

(q)    **Instruments**. To execute and deliver necessary instruments and give full receipts and discharges;

(r)    **Ancillary Executor**. To appoint any ancillary executor with the powers, and subject to the direction, of my executor; and

(s)    **Powers of Trustee**. To exercise any power now or hereafter conferred by the statutes of Illinois upon the trustee of a trust having its situs in Illinois.

3.4    **Payment of Expenses and Taxes**. To the extent directed by the trustee of my Living Trust, the executor shall pay out of the residue of my estate (a) expenses of my last illness, funeral, and burial, (b) the expenses of administering my estate wherever incurred, including the costs of safeguarding and delivering tangible personal property, (c) Death Taxes, and (d) debts enforceable against my estate, other than debts secured by life insurance or by an interest in a land trust or cooperative or by real property. I do not waive any rights my executor has under sections 2206, 2207, 2207A and 2207B of the Internal Revenue Code of 1986 or any similar statutes of any state (or any corresponding provision of subsequent tax law), and I authorize my executor to take such actions as are necessary to obtain reimbursement under such statutes, including withholding distributions. I waive all other rights to reimbursement and apportionment.

3.5    **Death Taxes**. "Death Taxes" includes all estate, transfer, inheritance, and other succession taxes (including penalties and interest) imposed by reason of my death. "Death Taxes" shall not include generation-skipping transfer tax imposed upon any generation-skipping transfer other than direct skip transfers made at my death of which I am the transferor. All generation-skipping transfer taxes on direct skip transfers of which I am the transferor occurring at my death as a result of a disclaimer shall be paid from the assets or amount so disclaimed which resulted in the direct skip transfer.

3.6    **Elections by Executor**. My executor (a) shall make the elections under tax laws, (b) shall make elections regarding the mode of distribution of the proceeds of any employee benefit plan, individual retirement plan or insurance contract, (c) shall make allocations of any available GST exemption, and (d) shall join in the execution and filing of any joint income tax return, as directed by the trustee of my Living Trust, or in the absence of such a direction, as my executor deems advisable. No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for any such election or allocation. My executor shall elect to treat any fraction or all of any trust as qualified terminable interest property for federal estate tax purposes to the extent the trustee of my Living Trust directs, or in the absence of such a direction, to the extent my executor deems advisable.

3.7    **Exoneration of Executor**. Any individual executor acting in good faith shall not be liable for any act or omission. No executor shall be liable for any act or omission of another executor.

## ARTICLE 4
## Construction

4.1    **Captions and Context of Terms**. Captions shall have no impact or meaning as to the terms of the document. Singular and plural, and masculine, feminine and neuter, shall be interchangeable as required or permitted in the context of this instrument.

4.2    **Incorporation by Reference**. If my Living Trust is not in existence at my death, I incorporate by reference its terms as they existed when I signed my Will, and I give my tangible personal property and the residue of my estate to the trustee designated by those terms to be held, administered and distributed pursuant to those terms.

Signed on ___7/12___, ~~2006~~ 2007.

_Raymond E Braun_                    **DRAFT**
_____
Raymond E. Braun

The testator, Raymond E. Braun, signed this Will in our presence on the date it bears. Immediately thereafter, at the testator's request and in the testator's presence and in the presence of each other, we signed our names as witnesses. We certify that we believed the testator to be of sound mind and memory at the time of signing.

| **Witnesses** | | **Addresses** |
|---|---|---|
| _____ | residing at | _____ |
| | | _____ |
| _____ | residing at | _____ |
| | | _____ |
| _____ | residing at | _____ |

_See attached 7/12/07_



Waiver to WCC 4/13/07

Patricia  45 %
Cary     30 %
Mike     25 %

Based on need and attention to parents

above $19,000 each to grand kids & see

See, Steven, Gregory, & Ashley

RE Brown

Mr. Raymond E. Braun
55 South Vail
Arlington Heights, IL 60005

rrison & Held, LLP
West Wacker Drive
e 950
ago, IL  60606

7/11/07

Cathy 50 %
Ray 30 %
Mike 20 %

Based on need and
attention to parents.

REB



# LAST WILL AND TESTAMENT
## OF
### RAYMOND E. BRAUN



I, RAYMOND E. BRAUN, of Arlington Heights, Illinois, being of sound and disposing mind and memory, do make, publish and declare this to be my Last Will and Testament, hereby revoking and annulling any and all prior Wills and Codicils by me made.

## ARTICLE I

### Personal Effects

I give and bequeath all of my personal and household effects of every kind including but not limited to boats, automobiles, and other vehicles, household furniture and furnishings, silverware, china, glass, books, pictures, jewelry, watches, and wearing apparel which I own at the date of my death, together with all insurance policies which are in force at the date of my death insuring any of the herein bequeathed property against any loss or liability, to my children who shall survive me by thirty (30) days, to be divided among them as they shall agree. If my children do not agree to the division of the said property among themselves, my Executor shall make such division among them, the division by my Executor to be in all respects binding upon my issue. There shall be no adjustment among my then living children in the event any child shall receive under this provision property of greater value than another child. I may leave a memorandum listing some or all of the items provided in this Article I that I wish certain persons to have and request that my wishes as set forth in the memorandum be observed.

## ARTICLE II

### Debts, Expenses and Taxes

I direct my Executor to pay out of the principal of my estate passing hereunder, after satisfaction of any gifts made pursuant to Article I, all my legally enforceable debts (except such of them as shall be secured by any mortgage, lien or other encumbrance and/or which shall not have become due and payable at the date of my death), funeral expenses and costs of administration, including ancillary administration. My Executor shall also pay out of the principal of my estate after satisfaction of any gifts made in Article I, or make deposits therefrom to secure such payments, all estate, inheritance, transfer and succession taxes including any penalties thereon, which may be assessed in any way by reason of my death, except that amount, if any, by which such taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have a power of appointment, which shall be paid by the person holding or receiving that property. Interest and penalties concerning any tax shall be paid and charged in the same manner as the tax. I authorize my Executor to take such action as may be necessary to collect payments for these items from the legatees and beneficiaries responsible therefor, and my Executor may withhold such amounts from any property otherwise distributable to any legatee or beneficiary hereby made responsible for such payment. My Executor shall not seek to recover any part of such payments from any other person or persons. My Executor shall not reimburse any person interested in any insurance policy on account of the application of any of the proceeds or surrender value of such policy in

satisfaction of any indebtedness to which such policy is subject, nor shall said person be subrogated to the rights of the creditor in any collateral because of such indebtedness. If my Executor shall be compelled at any time to pay any tax, interest or penalty with respect to my estate, my Executor shall be entitled to be reimbursed from the property of my estate, or if the property of my estate be then insufficient or if my estate be then distributed, my Executor shall be reimbursed by the person or persons to whom such property shall have been distributed to the extent of the amount received by each such person. My Executor, before making any distribution of either income or principal from my estate, may accordingly require an undertaking by said person or persons in form satisfactory to my Executor to reimburse him for all such taxes and penalties, or my Executor may withhold distribution pending release of any tax lien or the determination of any tax controversy.

## ARTICLE III

### Residuary Estate

**§1    Pour-Over to Revocable Trust**. I give, devise and bequeath all the rest, residue and remainder of my estate, of whatever kind and character, whether real, personal or mixed, and wheresoever located (excluding any property over which I may have a power of appointment, it being my intention not to exercise any such power, but including any lapsed bequest hereunder) all of which is hereinafter referred to as my "residuary estate," to the Trustee under a certain Trust Agreement, as heretofore executed on the 9th day of November, 2007 by and between myself as Grantor and Trustee, which created the RAYMOND E. BRAUN REVOCABLE TRUST, to be added to and become a part of the trust estate of said trust, and to be held, administered and distributed pursuant to the provisions of said Trust Agreement as it shall have been last amended prior to my death.

**§2    Alternative Disposition**. If, prior to the date of my death, the said RAYMOND E. BRAUN REVOCABLE TRUST shall have been revoked or otherwise terminated, or if for any other reason the gift, devise and bequest to the Trustee under said Trust Agreement shall fail or shall be legally ineffective, I give, devise and bequeath my residuary estate to my son, RAYMOND M. BRAUN, as Trustee, to be held and disposed of pursuant to the terms and conditions of said Trust Agreement as they exist as of the date of this instrument, which terms and conditions are hereby expressly incorporated herein by this reference.

## ARTICLE IV

### Executor

**§1    Appointment of Executor**. I hereby nominate and appoint my son, RAYMOND M. BRAUN, as Executor of this my Last Will. In the event of the death, resignation, refusal, failure, or inability of RAYMOND M. BRAUN to act as Executor, then my daughter, PATRICIA E. WILLIAMS, shall act as successor Executor is his place and stead.

**§2    Meaning of Executor**. Wherever reference is made herein to my "Executor," such reference shall be deemed to include any and all successor Executors and Co-Executors at any time qualified to act and acting as Executor of this my Last Will and Testament and shall

2

also include any Administrator with the Will Annexed and the time being in office, and each such successor Executor and Administrator with the Will Annexed shall, immediately upon qualification as such, be vested with all the powers, rights and duties as if originally named as the Executor hereof.

§3   **Exculpatory Clause.**   My Executor shall not be liable for any loss to my estate occasioned by acts in good faith in the administration of my estate, or in reliance on an opinion of counsel, and in any event my Executor shall be liable only for willful wrongdoing, or gross negligence, but not for honest errors of judgment.

§4   **Executor's Compensation and Expenses.**   My Executor shall be entitled to receive from my estate a fair and just compensation for services rendered as Executor, and my Executor shall also be reimbursed for all reasonable expenses incurred in the management, protection and distribution of my estate.

§5   **Executor's Powers.**   In addition to the powers confirmed by the law upon executors, and not by way of limitation thereof, my Executor is hereby authorized, in his sole discretion to exercise, the following powers without approval by or authorization of any court:

(a)   to make any division or distribution of my estate in kind, or partly in kind and partly in money, and to determine the value of any property so divided or distributed;

(b)   to hold, manage, improve, repair and control all property, real or personal, at any time forming a part of my estate;

(c)   to continue to hold any or all property (real or personal) owned by me, even though same be of a kind not usually considered suitable for executors to select or hold, or be a larger proportion in one or more investments than my Executor should hold;

(d)   to sell at public or private sale, to grant options to purchase, and to convey any and all of the property at any time forming a part of my estate for such price and upon such terms as my Executor shall determine;

(e)   to lease any tangible personal property at any time forming a part of my estate upon such terms as my Executor shall determine;

(f)   to open accounts, margin or otherwise, with brokerage firms, banks or others, and to invest the funds of my estate in, and to conduct, maintain and operate these accounts for the purchase, sale and exchange of stocks, bonds, and other securities, and in connection therewith to borrow money, obtain guarantees, and engage in all other activities necessary or incidental to conducting, maintaining and operating these accounts;

(g)   to determine whether receipts shall constitute principal or income, and whether expenses are properly chargeable to principal or income (except as otherwise provided herein, my Executor shall be governed in such determinations by the

3

provisions of the Uniform Principal and Income Act where applicable and from time to time existing, but in all cases not governed by such Act, my Executor is hereby authorized to determine what shall be charged or credited to income and what to principal, and the determination of my Executor shall be conclusive upon all persons); to establish out of income and credit to principal reasonable reserves for the depreciation of tangible property; to amortize premiums paid on the purchase of securities or other property; provided, however, any capital gain dividends from investments in mutual funds, common trust funds or real estate investment trusts shall be deemed principal;

(h)  to borrow money from any source (including my Executor), to extend or renew any existing indebtedness, and to mortgage, or pledge any property at any time forming a part of my estate;

(i)  to settle, compromise, contest or abandon claims or demands in favor of or against my estate;

(j)  to sell, convey, release, mortgage, encumber, lease, partition, improve, manage, protect and subdivide any real estate, interests therein or parts thereof;

(k)  to invest and reinvest my estate wholly or partially in common stocks or in any other type or types of assets, including but not limited to bonds, notes, debentures, mortgages, preferred stocks, or other property, real or personal, either within or without the state of Illinois as my Executor may deem advisable without being limited by any statute or rule of law regarding investments by executors;

(l)  to employ and pay reasonable compensation to such agents, accountants, attorneys, investment counsel and others, as may be reasonably necessary or desirable in managing, settling and protecting my estate;

(m)  to cause any securities or other property which may at any time form a part of my estate to be issued, held, or registered in the name of my Executor without indication of any fiduciary capacity, or in the name of a nominee, or in such form that title will pass by delivery;

(n)  to make loans in such amounts, upon such terms, at such rates of interest, and to such persons, partnerships, corporations, trusts or estates as my Executor may deem advisable; to own and pay premiums on insurance on the life of any person; and

(o)  to claim any expenses of administration of my estate either as deductions upon an income tax return or returns or as deductions from my gross estate upon an estate tax return, and to exercise any other elections available under any tax law, in such manner as in the sole judgment of my Executor will achieve an overall reduction in income and death taxes for the benefit of my estate, and I hereby direct that no adjustment between income and principal or in the amount of any bequest under this my Last Will shall be required or made as a result of any such election.

4

**§6     Bond of Executor**.  I direct that no Executor herein designated shall be required to give any bond, and if notwithstanding this direction, any bond is required by any law, statute or rule of court I direct that no surety be required thereon.  If permitted by law and if not inconsistent with the best interests of the beneficiaries as determined by my Executor, the administration of my estate shall be independent of the supervision of any court.

## ARTICLE V

## Construction

**§1     Pronouns**.  As used herein, the pronouns "he" "his" and "him" shall include the feminine, neuter and plural thereof wherever the context and facts require such construction.

**§2     Headings**.  The headings, titles and subtitles herein are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

**§3     Children**.  As used herein, the terms "child," "children" or "child or children" are intended to include my three (3) children now living; namely: PATRICIA E. WILLIAMS, RAYMOND M. BRAUN and MICHAEL J. BRAUN.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed my seal to this my Last Will and Testament, consisting of five (5) pages, this page included for purposes of attestation, and for purposes of identification I have placed my initials ~~at the face of each preceding page,~~ all this 9th day of November, 2007.

_RAYMOND E. BRAUN_

5

We hereby certify that the foregoing instrument was in the presence of us on the date last above written, signed, sealed, published, and declared by RAYMOND E. BRAUN to be his Last Will and Testament, and he requested us to act as witnesses thereto, and we in his presence, and in the presence of each other, believing him then to be of sound mind and memory, acting voluntarily and not under duress or constraint of any kind, saw him sign the said instrument as aforesaid, and thereupon hereunto subscribed our names as attesting witnesses to said Last Will and Testament.

_____ residing at _2050 N. BURLING_

_CHICAGO IL 60614_

_____ residing at _RML Specialty Hospital_

_Hinsdale IL 6052)_

_____ residing at _201 N. Westshore #305_

_Chicago, IL 60601_

6

STATE OF ILLINOIS      )
                           ) ss.
COUNTY OF DU PAGE    )

## AFFIDAVIT

We, the attesting witnesses to the Will of RAYMOND E. BRAUN on oath state that each of us was present on this 9th day of November, 2007, and saw the Testator sign the Will, to which this affidavit is attached, in our presence; that the Will was attested by each of us in the presence of the Testator; and that each of us believed the Testator to be of sound mind and memory at the time the Will was signed.

SUBSCRIBED AND SWORN to
before me this 9th day of
November, 2007.

_____
Notary Public

"OFFICIAL SEAL"
Scott Sissel
Notary Public, State of Illinois
My Commission Exp. 02/01/2010

# MEMORANDUM REFERRED TO IN THE
## LAST WILL AND TESTAMENT
### OF
### RAYMOND E. BRAUN

I wish the following persons to have the following items of personal property and request that my wishes be observed and respected by my Executor:

| Person | Items of Property |
|---|---|
| PATRICIA E. WILLIAMS | My Mother's Wedding Ring |

Dated:  November 9, 2007

# TRUST AGREEMENT ESTABLISHING
## RAYMOND E. BRAUN REVOCABLE TRUST
### RAYMOND E. BRAUN, GRANTOR

**THIS AGREEMENT**, made this 9th day of November, 2007, in Hinsdale, Illinois, by RAYMOND E. BRAUN of Arlington Heights, Illinois, as Grantor (hereinafter referred to as the "Grantor") and RAYMOND E. BRAUN and RAYMOND M. BRAUN as Co-Trustees (hereinafter referred to as "Trustee" or "Co-Trustee").

**WHEREAS**, it is the intention of the Grantor to create a trust for the primary benefit of himself which trust shall be known as the "RAYMOND E. BRAUN REVOCABLE TRUST" (hereinafter sometimes referred to as the "trust"); and for that purpose the Grantor hereby makes a gift and settlement of the property described and listed in Schedule A attached hereto and incorporated herein by this reference.

**NOW THEREFORE**, in consideration of the premises, RAYMOND E. BRAUN, as Grantor and as Trustee, upon affixing his signature hereto does hereby declare and establish this trust, to be held by the Trustee in trust for the purposes and subject to all of the terms, conditions and provisions hereof, and the Trustee does hereby agree to hold and administer the trust estate of the trust and to dispose of the principal thereof and the income therefrom as in this Agreement set forth.

## ARTICLE I

### Rights and Powers of Grantor

§1     **Right to Revoke, Alter and Amend**.  During the lifetime of the Grantor, the trust shall be revocable by the Grantor and the Grantor shall have the right at any time and from time to time by an instrument in writing signed by the Grantor and delivered to the Trustee to:  (a) modify, alter and amend this Agreement; (b) revoke this Agreement and terminate the trust created pursuant to the provisions hereof, in whole or in part, and immediately upon such revocation and termination, the Trustee shall redeliver to the Grantor the entire trust estate or the portion thereof to which such revocation relates; (c) add property of any nature to the trust estate of the trust, to be held, administered and distributed as a part thereof; (d) designate successor Trustees, appoint Co-Trustees or remove any Trustee or Co-Trustee, appointing any one or more persons or corporations or combination thereof as successor Trustee or Co-Trustees; (e) direct the Trustee to transfer property from the trust estate to any person, trustee or entity whatsoever free of trust; and (f) direct the Trustee to use property from the trust estate as collateral for any personal obligation of the Grantor or any other person.

§2     **Right to Net Income and Principal**.  During the lifetime of the Grantor, the Trustee is hereby authorized to distribute the entire net income from the trust estate in convenient installments to the Grantor or otherwise as the Grantor may from time to time direct in writing, and the Trustee shall also distribute to the Grantor such part or all of the principal of the trust estate as the Grantor shall request in writing from time to time. If at any time or times the Grantor is under a legal disability, or by reason of illness or mental or

physical disability, in the opinion of the Trustee, unable properly to manage the Grantor's affairs, the Trustee shall use the income and such part or all of the principal in the manner as the Trustee deems best, for the care, support, and comfort of the Grantor, for the payment of any premiums on insurance on the Grantor's life, or for any other purpose the Trustee deems to be for the best interest of the Grantor.

§3    **Provisions During Incapacity**.    Despite any other language herein contained, in the event that the person or entity named as successor Trustee hereunder shall make a written determination that the Grantor (when the Grantor is then acting as Trustee hereunder) is under a legal disability, or by reason of illness or mental or physical disability, is unable to give prompt and intelligent consideration to the financial matters required to properly act as Trustee hereunder (and said determination must be confirmed in writing by a physician licensed to practice medicine in the United States of America), the successor Trustee appointed hereunder shall then act as successor Trustee in the place of the Grantor who is unable to act as Trustee hereunder, and any other party dealing with this trust or said successor Trustee may rely upon the aforementioned written notice (if confirmed by a physician as aforesaid) of said determination.

§4    **Tax Planning Gifts During Grantor's Life**.    The Trustee may, as the Trustee determines in his discretion, make gifts and transfers out of the trust estate to or for the benefit of any one or more of the Grantor's descendants and otherwise engage in estate planning strategies for the benefit of such persons if doing so would be in the best interests of the Grantor, his family and his estate; provided, however, that no gift to a person in any calendar year that is not a "qualified transfer" for tuition or medical care (as defined in Section 2503(e) of the Code) may exceed the amount of the remaining gift tax annual exclusion allowable to the Grantor for such year pursuant to Section 2503(b) of the Code with respect to that person, assuming the application of Section 2513 of the Code if the Grantor is then married.

§5    **Release of Rights**.    Any or all of the rights and powers retained by the Grantor pursuant to this Article I may be completely and irrevocably released at any time and from time to time by the Grantor by an instrument in writing signed by the Grantor and delivered to the Trustee. After the execution of such an instrument, the trust shall be irrevocable to the extent specified in the release, and neither the Grantor nor any other person shall then, to the extent the release so provides, have any right to alter, amend or revoke the trust.

## ARTICLE II

### Trustees

§1    **Trustee**.    The initial Co-Trustees of this trust shall be RAYMOND E. BRAUN, who is the Grantor and the Grantor's son, RAYMOND M. BRAUN.

§2    **Designation of Successor Trustees**.    The Co-Trustees of the trust, while serving as Co-Trustees, shall have the power to designate successor Trustees with respect to each separate trust. In the event of the death, resignation, refusal, failure or inability of the

2

Grantor to act as Co-Trustee, then RAYMOND M. BRAUN shall act as sole successor Trustee hereunder.  In the event of the death, resignation, refusal, failure or inability of RAYMOND M. BRAUN to act as Co-Trustee or sole Trustee hereunder, then the Grantor's daughter, PATRICIA E. WILLIAMS, shall act as successor Co-Trustee or Trustee, as the case may be, in his place and stead.

## ARTICLE III

### Debts, Taxes and Expenses

Upon the death of the Grantor, the Trustee shall pay certain of the Grantor's debts, taxes and expenses as more fully set forth in Section 2 of the Administrative Provisions.

## ARTICLE IV

### Distribution of Revocable Trust Upon Death of Grantor

Upon the death of the Grantor, all of the trust estate of the trust which shall not be used for payment of debts, taxes and expenses of the Grantor's estate pursuant to Article III hereof shall be distributed as follows:

(a)   Fifteen Thousand dollars ($15,000.00) outright to my grandson, Lee Williams, if he is then living;

(b)   Fifteen Thousand dollars ($15,000.00) outright to my grandson, Sean Williams, if he is then living;

(c)   Fifteen Thousand dollars ($15,000.00) outright to my grandson, Gregory Cruz, if he is then living; and

(d)   Ten Thousand dollars ($10,000.00) outright to my granddaughter, Ashley Blume, if she is then living.

The balance of the trust estate which remains after the foregoing distributions have been made or provided for shall be divided into as many shares of equal value as are necessary to make the following distributions:

(a)   Five (5) shares to my daughter, Patricia E. Williams, if she is then living, or, if not, per stirpes to her then living descendants, if any;

(b)   Three (3) shares to my son, Raymond M. Braun, if he is then living, or, if not, per stirpes to his then living descendants, if any; and

(c)   Two (2) shares to my son, Michael J. Braun, if he is then living, or, if not, per stirpes to his then living descendants, if any.

If no descendants of the Grantor shall be living upon the death of the Grantor, then the balance of the trust estate shall be distributed among the heirs-at-law of the Grantor. Each such share distributable to a descendant of the Grantor who is a child of the Grantor shall be distributed outright and not in trust. Each such share distributable to a descendant who is not a child of the Grantor shall be retained in trust by the Trustee, as a separate trust, of which the descendant of the Grantor, for whom such share shall have been allocated shall be a beneficiary, and shall be held, administered and distributed pursuant to the provisions of Article V hereof.

## ARTICLE V

### Descendant's Trusts

Each Descendant's Trust shall be held, administered and distributed as follows:

**§1      Income and Principal.** The Trustee is hereby authorized to distribute, at any time and from time to time, all or as much of the net income and principal of each Descendant's Trust to the beneficiary of such trust as the Trustee deems to be in the best interests of said beneficiary. Accumulated income shall be added to principal.

**§2      Right to Withdrawal.** The beneficiary of a Descendant's Trust may withdraw any part or all of the principal at any time after reaching twenty-five (25) years of age. Payments shall be made without question upon the beneficiary's written request. The right of withdrawal shall be a privilege which may be exercised only voluntarily and shall not include any involuntary exercise.

**§3      Power of Appointment.** Notwithstanding Section 5(d) of the Administrative Provisions hereof, if a beneficiary dies before receiving his or her share in full, then upon the beneficiary's death his or her share shall be held in trust hereunder and distributed to or in trust for the appointee or appointees, with such powers and in such manner and proportions as the beneficiary may appoint by his or her will making specific reference to this power of appointment.

**§4      Distribution on Default of Exercise of Power of Appointment.** Upon the death of a beneficiary of a Descendant's Trust any part of his or her share not effectively appointed shall be distributed in separate shares per stirpes to his or her then living descendants, each share to be retained and held as a Descendant's Trust hereunder, or, if there shall be no living descendants of the beneficiary, then per stirpes to the descendants of the beneficiary's most immediate ancestor who was a descendant of the Grantor, or if none, then per stirpes to the Grantor's then living descendants (or if no descendant of the Grantor shall then be living, then among the heirs-at-law of the Grantor), except that, unless the beneficiary directs otherwise by a valid Will, the Trustee shall first pay from the principal of said trust directly or to the legal representative of the beneficiary's estate, as the Trustee deems advisable, the amount by which the estate and inheritance taxes assessed by reason of the death of the beneficiary shall be increased on account of the inclusion of all or any portion of the trust estate in the beneficiary's gross estate for Federal estate tax purposes. Each portion otherwise distributable to a descendant of the Grantor for whom a share of the

trust is then held thereunder shall be added to that share.

## ARTICLE VI

### Miscellaneous

**§1    Child or Children**. As used herein, the terms the "Grantor's child," Grantor's children" or "child or children of the Grantor" are intended to include the Grantor's three (3) children now living; namely: PATRICIA E. WILLIAMS; RAYMOND M. BRAUN; and MICHAEL J. BRAUN.

**§2    Heirs-at-Law**. If pursuant to this Trust Agreement any assets are distributable to the Grantor's "heirs-at-law," such assets shall be distributed to the Grantor's heirs in accordance with the laws of descent of the state of Illinois in force and effect at the time of the Grantor's death.

**§3    Administrative Provisions**. The Administrative Provisions attached hereto on this date as Schedule B are hereby incorporated herein by this reference.

**IN WITNESS WHEREOF**, the Grantor and the Trustee have each executed this instrument on the date first written above.

_____

RAYMOND E. BRAUN, as Grantor and
Co-Trustee

SUBSCRIBED AND SWORN to before me this 9th day of November, 2007

_____
Notary Public

"OFFICIAL SEAL"
Scott Sissel
Notary Public, State of Illinois
My Commission Exp. 02/01/2010

The undersigned hereby accepts the foregoing trust and the property interests listed in Schedule A hereto attached on the date first written above.

_____

RAYMOND M. BRAUN, as Co-Trustee

SUBSCRIBED AND SWORN to before me this 9th day of November, 2007

_____
Notary Public

This Instrument Prepared By:

William M. Long
McGuireWoods LLP
77 W. Wacker Drive
Chicago, Illinois 60601

"OFFICIAL SEAL"
Scott Sissel
Notary Public, State of Illinois
My Commission Exp. 02/01/2010

5

## TRUST AGREEMENT ESTABLISHING
## RAYMOND E. BRAUN REVOCABLE TRUST

### Schedule A - List of Property

Cash                                                                                      $10.00

Merrill Lynch (Account #682-12899)

Sch. A

# TRUST AGREEMENT ESTABLISHING
# RAYMOND E. BRAUN REVOCABLE TRUST

## Schedule B – Administrative Provisions

**SECTION 1. General.** These Administrative Provisions are incorporated into the above-referenced Revocable Trust to which this schedule is attached. The Administrative Provisions are an integral part of the Revocable Trust and must be read with the Revocable Trust and all other schedules attached thereto and hereto, as constituting the complete Trust Agreement. All references herein to the "Trust Agreement," the "Agreement" or "herein" shall refer to the whole of such Trust Agreement or any designated portion thereof as pertaining to the said Revocable Trust and any separate trust created thereunder.

**SECTION 2. Payment of Debts, Taxes and Expenses.** Upon the death of the Grantor, the Trustee shall, to the extent that the assets of the Grantor's estate (other than tangible personal property, property or sums specifically bequeathed or devised or property which in the sole judgment of the Trustee does not have a readily realizable market value) shall be insufficient, pay the Grantor's funeral expenses, legally enforceable claims, reasonable costs of administration of the Grantor's estate, any allowances by court order for those dependent upon the Grantor, and all income, estate, inheritance, transfer and succession taxes, including any interest and penalties thereon, which may be assessed by reason of the Grantor's death, without reimbursement from the Grantor's Executor or Administrator, from any beneficiary of insurance upon the Grantor's life, or from any other person; except that the amount, if any, by which the estate and inheritance taxes shall be incurred as a result of the inclusion of property in which the Grantor has a qualifying income interest for life or over which the Grantor may have a power of appointment, or that is not otherwise held as part of or payable to the Grantor's estate or trust following the Grantor's death, which shall be paid by the person holding or receiving that property. The Trustee may make such payments directly or may pay over the amounts thereof to the Executor or Administrator of the Grantor's estate. Written statement of the Executor or Administrator of the sums to be paid hereunder shall be sufficient evidence of their amount and propriety for the protection of the Trustee and the Trustee shall be under no duty to see to the application of any such payments. In no event shall any asset not includable in the Grantor's gross estate as finally determined for federal estate tax purposes be used for the foregoing purposes; provided, however, that this sentence shall not limit the power of the Trustee to purchase assets from or loan money to the Grantor's estate.

**SECTION 3. Distributions.**

(a)     **Discretionary Distributions.** Whenever the Trustee shall be herein authorized to distribute all or any part of either the net income or the principal, or both, of a separate trust, such authority may be exercised in the discretion of the Trustee, by distributions in cash or kind, at any time and from time to time, and such authority shall permit the Trustee to terminate such trust by such distributions. If there shall be more than one beneficiary of such trust, any such distribution may be made to all or any one or more or such beneficiaries in such equal or unequal proportions and amounts as said Trustee in his discretion may determine, and there may be no adjustment among said beneficiaries by reason of any such distribution. Any net income of a separate trust which shall not be distributed by reason of the Trustee's exercise of discretion, shall be accumulated and added to the principal of such trust, to become a part thereof.

(b)     **Division Upon Death.** In the event that the Trustee of a trust hereunder shall be directed upon the death of any person to divide the then remaining trust estate hereof among other designated persons, or to retain the trust estate for a designated person, or to retain the trust estate for a designated successor beneficiary or beneficiaries, such division or retention shall be effective only to the extent that such deceased person shall not have validly exercised any power of appointment granted to such person over such trust estate. If as a result of any division of such trust estate, any share thereof is allocable to any person and not expressly retained in trust, such share shall be distributed outright to such person by the Trustee.

(c)     **Descendants.** As used herein, the following terms shall have the indicated meanings: (a) the term "descendant" shall be interchangeable with the term "issue" and shall mean a descendant in the first, second or any other degree of the designated ancestor; (b) the term "child" shall mean a descendant in the first degree of the designated ancestor; and (c) the term "grandchild" shall mean a descendant in the second degree of the designated ancestor; provided further, however, that a person adopted prior to attaining the age of eighteen (18) years, and the descendants as defined herein, of any such adopted person shall for all purposes be regarded as the lawful blood descendants of the adopting parent or parents and of anyone who is by blood or adoption an ancestor of the adopting parent or of either of the adopting parents; further provided, however, the term "descendant" shall not include any person who shall not then be considered "legitimate" under the laws of the state where such person shall then be domiciled. All terms herein defined shall include the plural form thereof wherever the context and facts so require.

(d)     **Per Stirpes.** As used herein, the term "per stirpes" shall have its accepted legal meaning; for example if a distribution is to be made "per stirpes" to the descendants of a specified person and one or more of said specified person's children shall be deceased but shall be survived by a then living child or children (and no child or children of said deceased child

B-1

of said specified person shall then be deceased), then the share which would otherwise have been distributable to each such deceased child of said specified person had such child then been living shall be distributed in equal shares to the then living child or children of each such deceased child, with the effect that the child or children of each such deceased child of said specified person shall receive by right of representation the share which his or their parent would have received had such parent then been living, and this shall apply if all of the children of said specified person shall be deceased.

(e) **Beneficiary Under Disability**. In the event that income or principal shall become distributable free of any trust to a minor beneficiary, to a beneficiary not adjudicated incompetent, but who, by reason of illness or mental or physical disability, is, in the sole discretion of the Trustee, unable properly to administer such amounts, then such amounts may be used by the Trustee directly for the best interests of said beneficiary or distributed by the Trustee for the benefit of said beneficiary to such one or more of the following distributees whom the Trustee shall in his sole discretion deem best under the circumstances: (i) directly to said beneficiary; (ii) to the legally appointed guardian or conservator of said beneficiary; (iii) to a parent or other relative or friend of said beneficiary; or (iv) to those dependent for support upon said beneficiary; and, (v) in the case of a minor beneficiary, to a custodian under the Uniform Transfers to Minors Act or similar act ("Act") of any applicable jurisdiction (but if there shall not then be a custodian for said minor under such Act, then the Trustee shall designate a custodian from among those eligible and willing to serve). The receipt by any such distributee shall constitute a full release and discharge to the Trustee upon making such distribution and such Trustee shall not be obligated to see to the application of any money or property so distributed.

(f) **Small Trust Termination**. If at any time the Trustee shall determine that any separate trust is of a size that is no longer economical to administer, the Trustee, without further responsibility, may (but need not) distribute the entire trust estate of such trust to the beneficiary of such trust.

(g) **Spendthrift Provision**. No income or principal distributable or to become distributable with respect to a separate trust shall be transferable, assignable, or subject to being in any manner whatsoever anticipated, charged or encumbered by any person beneficially interested in such separate trust, or subject to interference or control by any creditors of said person, or subject to any claim for alimony or for the support of a spouse pursuant to a decree of separate maintenance or separation agreement, or to be taken or reached by any legal or equitable process in satisfaction of any debt, liability or obligation of said person prior to its receipt by said person; provided, that the provisions of this section shall not prevent the exercise of, or transfer pursuant to the exercise of, any power of appointment granted hereunder.

(h) **Support**. The "support" of a beneficiary shall include his support and maintenance in reasonable comfort, medical care (including but not limited to dental and psychiatric care) and education (including but not limited to college, post-graduate, professional, vocational, language and artistic studies). Distributions for the support of a beneficiary shall be based upon the standard of living to which such beneficiary shall have been accustomed during the three (3) year period immediately preceding any such distribution, but shall be made only if and to the extent that the other income and resources known to the Trustee to be available to said beneficiary for such purpose (including the income and resources of any person who shall be legally obligated to support said beneficiary) are inadequate.

(i) **Best Interests**. The "best interests" of a beneficiary shall be liberally construed by the Trustee and shall contemplate not only distributions necessary for the support of said beneficiary (if such distributions shall be deemed to be in the best interests of said beneficiary by the Trustee) but also distributions for his comfort and convenience. As illustrations, and not in limitation of the purposes for which distributions may be made under such standard, the Trustee may make distributions to provide for weddings and graduations, to permit said beneficiary to purchase or furnish a personal residence or to permit said beneficiary to purchase, initiate or invest in a business which the Trustee personally deems to be sound or promising, even though said business might be the type of investment in which, because of its risk, the Trustee would not or could not invest the trust estate. In making any such discretionary distribution the Trustee shall consider both the general financial resources and requirements of said beneficiary and the ability of said beneficiary to deal with and manage the money or property involved and shall exercise the discretionary powers herein conferred primarily to benefit said beneficiary rather than the remaindermen. This Section is intended solely as a precatory guide to the Trustee and shall in no way be construed to alter, limit or enlarge the discretions and powers conferred upon the Trustee by any other provision hereof nor to require the Trustee to make any distribution to any beneficiary.

**SECTION 4. Beneficiary**.

(a) **Meaning of Beneficiary**. Unless otherwise expressly identified herein, wherever reference is made herein to a "beneficiary," such reference shall be deemed to mean a person to whom the Trustee of a separate trust is then directed or authorized to distribute net income or principal or both from the trust estate of such trust, and wherever the facts and context require such construction, the term "beneficiary" shall be deemed to mean the plural form thereof.

(b) **Acts on Behalf of Beneficiaries Under Disability**. All statements, accounts, written instruments, releases, notices or other documents required to be delivered to or executed by, and all powers exercisable by, a beneficiary may be

B-2

delivered to, executed by or exercised by the legally appointed conservator of an incompetent beneficiary or the legal guardian of the estate of a minor beneficiary, or if there is no guardian of the estate, by a parent of minor; when so delivered, executed or exercised, they shall be binding upon said incompetent or minor beneficiary and his heirs, personal representatives of his estate and assigns, and shall be of the same force and effect as if delivered to, executed by or exercised by a beneficiary acting under no legal disability.

(c)     **Beneficiary as Trustee**. Except with respect to any powers of appointment or as may be expressly provided herein to the contrary, no Trustee shall have any voice, determination or vote relating to any discretionary distributions of the income or principal of any separate trust constituted hereunder either: (i) to or for the benefit of said Trustee when said Trustee shall be a beneficiary of such trust except to the extent governed by and made pursuant to a standard under the Trust Agreement which constitutes an ascertainable standard within the meaning of Sections 2041 and 2514 of the Code, or (ii) to or for the benefit of any person whom said Trustee is legally obligated to support, when such distribution is or would be in full or partial discharge of such obligation.

(d)     **Renunciation or Disclaimer**. Any person who is a beneficiary or who is otherwise interested in or has any power over any separate trust may at any time renounce or disclaim the whole, or from time to time, any part of an interest in such trust, either as to income or principal, or both, by an instrument in writing delivered to the Trustee, and thereafter such trust or the part of such trust which shall have been renounced or disclaimed shall be administered and distributed as if said person had died on the date of delivery of said written instrument, and as if said person had not exercised any testamentary power of appointment granted to said person; provided, however, that such renunciation or disclaimer shall not, unless specifically so provided, affect the right of said person to receive subsequent distributions of principal or income from the trust estate of any separate trust upon the death of any other person, upon the renunciation or disclaimer by any other person of any interest in any separate trust or pursuant to the exercise of any power of appointment by any other person.

### SECTION 5. Powers of Appointment.

(a)     **Manner of Exercise of Powers of Appointment**. In addition to, and not in limitation of the rights accorded by law to a donee of a power of appointment, the donee of a power of appointment granted hereunder with respect to any separate trust may exercise such power by making appointments from the trust estate in cash or kind, including a direction to the Trustee to distribute specific property, outright to, or to a Trustee or Trustees to hold in trust for the exclusive benefit of, any one or more of the objects of the power, and may impose lawful spendthrift restrictions and other lawful conditions upon any appointment, provided that no one other than an object of the power is benefited thereby. The donee may also exercise any power of appointment in any one or more of the following ways: (i) by creating life estates for any one or more objects of the power with remainders to others of said objects, (ii) by appointing to or for the benefit of children, grandchildren or more remote descendants even though the parents, grandparents, or ancestors of such appointees are living, (iii) by creating in any object of the power either a general or a limited power of appointment and (iv) by substituting (but only if said donee himself shall not thereafter be a beneficiary of such trust) or by adding any one or more objects of the power as beneficiaries of such trust. The donee of a lifetime power of appointment hereunder may exercise such power at any time or from time to time to be effective during his lifetime or upon his death, by an instrument in writing delivered to the Trustee during the lifetime of such donee.

(b)     **Testamentary Powers of Appointment**. The donee of a power of appointment exercisable on the death of such donee shall exercise such power only in a valid Will or Codicil. No Trustee of any separate trust shall incur any liability to any person in relying on any instrument admitted to probate in any jurisdiction as the valid Will or Codicil of a donee of a testamentary power of appointment, or in acting upon the assumption that said donee failed to exercise such power of appointment if within three (3) months after the date of death of said donee, the Trustee shall have no notice or knowledge of the existence of a valid Will or Codicil of said donee and in making allocation or distribution accordingly of the part of the trust estate of such trust subject to such power of appointment; provided, however, that any such allocation or distribution shall be without prejudice to the rights of any appointee of said donee to recover the allocated or distributed property from any person or persons to whom such allocation or distribution shall have been made in the event that after such allocation or distribution there should be found a valid Will or Codicil in which said donee shall have validly exercised such power of appointment.

(c)     **Renunciation or Release of Powers of Appointment**. Any power of appointment granted hereunder may be renounced or released in whole or in part by the donee of such power and may be reduced by the donee of such power in such manner as to reduce or limit the objects in whose favor the power would be otherwise, exercisable. In addition to any other method of renunciation, release or reduction recognized by law, any power may be renounced, released or reduced by the donee of such power by an instrument in writing signed by said donee and delivered to the Trustee of the separate trust of which such renunciation, release or reduction relates. Solely for purposes of this Section, the word "power" shall include (without limiting the generality of the meaning of such word) any power of a Trustee of a separate trust which constitutes a power of appointment within the meaning of the United States Internal Revenue Code from time to time in force, and the word "donee" shall include said Trustee.

B-3

(d) **Restrictions on Exercise of Limited Powers of Appointment.** Except as otherwise provided herein by express reference to this Section 5(d), no limited power of appointment granted hereunder shall be exercised or exercisable to any extent in favor of the donee of such power, or the estate, the creditors or the creditors of the estate of said donee, or to discharge or satisfy a legal obligation of said donee, or for the pecuniary benefit of said donee.

(e) **Exercise of Powers of Appointment.** No exercise of any power of appointment by the donee thereof shall be effective unless the written instrument or the valid Will or Codicil of the donee in which the donee exercises such power (i) shall be executed subsequent to the date on which such power shall commence and (ii) shall specifically refer to and expressly exercise such power.

## SECTION 6. Trustee.

(a) **Meaning of Trustee.** Wherever reference is made herein to the "Trustee," such reference shall be deemed to include the singular and plural thereof wherever the context and facts require, and to include any and all successor Trustees at any time acting as the Trustee or Co-Trustee of a separate trust, unless otherwise specifically provided herein to the contrary.

(b) **Majority Determination.** Except as otherwise provided herein, in the event of a disagreement among the Trustees, the views of the majority shall prevail. The affirmative vote of a majority of those authorized to vote on any matter shall constitute a majority. If but two Trustees shall be authorized to vote on a matter, the affirmative vote of both shall be required. Failure to obtain a majority shall be treated as if the Trustees failed to act. All votes shall be taken within thirty (30) days of the date of the event which requires a decision to be made. Any Trustee who shall cast a negative vote with respect to any action or any failure to act shall in no way be liable or responsible for such action or failure to act.

(c) **Delegation to Co-Trustee.** In the event there shall be more than one Trustee designated to act hereunder, each Co-Trustee hereby delegates, which delegation may be revoked or modified by the Trustee making the delegation, pursuant to Section 7(w) herein, to each other Co-Trustee, all the authorities, discretions, and powers conferred upon a Trustee in this Agreement in order to hold and administer the assets of the trust estate hereunder to the fullest extent permitted herein as if each Co-Trustee acting hereunder is the sole Trustee; provided, however, such delegations shall be limited to the administrative duties, responsibilities, authorities, discretions and powers conferred upon the Trustee hereunder and there shall be no delegation of any authorities, discretions or powers with respect to distributions to the beneficiaries hereunder and the fiduciary determinations (as opposed to ministerial tasks) required or permitted pursuant to this Agreement.

(d) **Third Parties and Bond.** No person dealing with the Trustee of any separate trust shall be obligated to inquire as to the powers of such Trustee or to see to the application of any money or property delivered to such Trustee. Such Trustee shall not be required to obtain authority from or approval of any court in the exercise of any power conferred upon him hereunder. No Trustee shall be required to make any current reports or accountings to any court nor to furnish a bond for the proper performance of the duties of the Trustee as Trustee of any separate trust; but if any such bond is nevertheless required by any law, statute or rule of court, no surety shall be required thereon.

(e) **Trustee Liability.** No Trustee of any separate trust shall be liable for any loss, liability, expense or damage to the trust estate of such trust occasioned by such Trustee's acts or omissions in good faith in the administration of such trust (including acts or omissions in reliance on opinion of counsel) and in any event the Trustee shall be liable only for his own willful default, wrongdoing, or gross negligence, but not for honest errors of judgment. Except as otherwise specifically provided herein the Trustee may rely upon any notice, certificate, Will, affidavit, letter, telegram, or other paper or document believed by him to be valid or genuine, or upon any evidence deemed by him to be sufficient, in making any payment, allocation or distribution hereunder. The Trustee shall incur no liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in any separate trust. This Section is intended to protect the Trustee under the stated circumstances, and is not intended to affect the rights hereunder of any person.

(f) **Resignation of Trustee.** Any Trustee of any separate trust may resign at any time by written notice delivered to each Co-Trustee, if any, and to the resigning Trustee's successor as Trustee, if known, or if not known, to any beneficiary of such trust. The resignation, refusal, failure or inability of any Trustee to act as Trustee of any separate trust shall not prevent said Trustee from acting as Trustee of any other trust.

(g) **Powers, Rights and Duties of Successor Trustees.** Each successor Trustee shall automatically acquire as of the date of a vacancy all of the title to each asset of the trust estate, powers and discretion which are then vested in his predecessor, without the necessity of any conveyance or transfer, but any predecessor Trustee shall execute all documents and do all acts necessary to vest and indicate such title in such successor Trustee.

(h) **Liability of Successor Trustees.** No successor Trustee shall be liable for the acts or defaults of any predecessor Trustee, nor for any loss or expense from anything done or neglected to be done by any predecessor Trustee, but

such successor Trustee shall be liable only for his own willful wrongdoing or gross negligence with respect to property received by him as Trustee. Any successor Trustee who shall be then acting as Trustee pursuant to a notice of vacancy shall not be guilty of any wrongdoing merely because he is acting as successor Trustee if it shall later be discovered that another has been designated as successor Trustee pursuant to any provision herein.

(i)     **Vacancy.** Except as otherwise provided herein, a vacancy in the trusteeship shall be deemed to exist in the event of the death, resignation, refusal, failure or inability of any person to act as Trustee or Co-Trustee of a separate trust. Notice of a vacancy in the trusteeship shall be effective if given to the next successor Trustee by an instrument in writing signed by the resigning predecessor Trustee, a then acting Co-Trustee or a beneficiary of such separate trust, and delivered to such successor Trustee and any one of the other then acting Co-Trustees. Immediately upon receipt of such notice, the recipient shall act as Trustee (or Co-Trustee) or shall decline in writing to act.

(j)     **Removal of Corporate Trustee.** When a bank or trust company at any time is acting as Trustee or Co-Trustee of a separate trust, the beneficiary of such trust (or if there shall be more than one, the beneficiaries jointly and unanimously) may remove said corporate Trustee with or without cause by delivering to said corporate Trustee a written instrument, signed by said beneficiary, provided that such written instrument shall concurrently appoint a successor corporate Trustee pursuant to the provisions of Section 6(k) herein.

(k)     **Appointment of Successor Corporate Trustee.** In the event of the death, resignation, refusal, failure or inability to act of all named individual Trustees or the resignation, refusal to act, or removal of a corporate Trustee as Trustee of a separate trust, a successor corporate Trustee to fill the vacancy in the trusteeship so occurring shall be appointed by the beneficiary of such trust (or if there shall be more than one beneficiary of such trust, by the beneficiaries jointly and unanimously) by an instrument in writing delivered to the vacating and the successor corporate Trustees; provided, however, that any successor corporate Trustee so appointed must be a bank or trust company having a capital and surplus of not less than Fifty Million Dollars ($50,000,000.00). The powers granted to a beneficiary of a separate trust pursuant to Section 6(j) and this Section 6(k) may be completely and irrevocably released by a written instrument signed by said beneficiary and delivered to the corporate Trustee of such separate trust.

(l)     **Merger of Corporate Trustee.** If any corporate Trustee at any time acting as Trustee of a separate trust shall be merged into or consolidated with or shall sell or transfer all or substantially all of its assets and business to any other corporation, or shall be in any manner reorganized or reincorporated, the corporation to which such sale or transfer shall be made or the corporation resulting therefrom shall thereupon become the Trustee of such trust without any further act on the part of any Trustee or beneficiary of such trust.

(m)     **Power to Designate Successor Trustees.** If any person shall herein have the "power to designate successor Trustees" of a separate trust, such person shall be sometimes referred to as a "designator." The successor Trustee to fill any vacancy in the trusteeship of such trust (and each further successor Trustee) shall be such one or more persons (other than a person who shall be deemed to be a Grantor of such trust) or corporations or combination thereof who shall be designated by name or by a plan of succession established by a designator, or the designator may provide that a vacancy shall not be filled if at least one Trustee shall then be acting or shall then be capable of acting and willing to act. Any such designation shall be made either: (i) by an instrument in writing signed by the designator and delivered to a then acting Trustee of such trust (or to a beneficiary if the designator himself shall be the sole Trustee) or (ii) by the designator's valid Will admitted to probate in any jurisdiction within three (3) months after his death, or if no Will is admitted to probate, such Will that is filed with the appropriate authorities. If no successor Trustee shall have been designated within thirty (30) days of a vacancy (or within three (3) months of the designator's death, whichever date later occurs), then the designator shall be conclusively presumed to have failed to have made a designation.

(n)     **Revocation or Release.** Any person may at any time or from time to time revoke any designation made or plan established by him while a designator, and any designator may completely and irrevocably release the power to designate successor Trustees, such revocation or release to be made in the same manner as is herein provided for making such designation or establishing such plan; provided, however, that no such revocation or release shall be effective to remove any then acting Trustee. Upon any such revocation, the designator shall have the same powers to designate successor Trustees as he would have had he never exercised such power.

(o)     **Generation-Skipping Tax.** To enable trusts to be either completely exempt or non-exempt from generation-skipping tax, or for any other reason, the Trustee may divide a trust into two (2) or more separate trusts and may hold an addition to a trust as a separate trust. The rights of beneficiaries shall be determined as if the trusts were aggregated, but the Trustee may pay principal to the beneficiaries and taxing authorities disproportionately from the trusts. The Trustee shall not be liable for deciding in its discretion to exercise or not exercise these powers. Upon division or distribution of an exempt trust or a non-exempt trust held hereunder, the Trustee in its discretion may allocate property from the exempt trust first to a share from which a generation-skipping transfer is more likely to occur. If a trust hereunder would incur generation-skipping tax by reason

B-5

of the death of a beneficiary (assuming the non-exercise of any limited testamentary power of appointment granted to the beneficiary hereunder), then the beneficiary shall have the power to appoint the trust property otherwise constituting a generation-skipping transfer to the creditors of his or her estate. This general testamentary power of appointment is granted to avoid generation-skipping transfer tax. This power of appointment may be exercised only by a will making specific reference to this power, and it shall be in addition to any other testamentary power of appointment granted to the beneficiary under this agreement. Any such trust property not effectively appointed by the beneficiary shall be held and disposed of as the Trustee shall first pay from the principal of such property, directly or to the personal representative of the beneficiary's estate as the Trustee deems advisable, the amount by which the estate and inheritance taxes assessed by reason of death of the beneficiary shall be increased as a result of the inclusion of such property in the beneficiaries estate for such tax purpose. The Trustee's selection of assets to be sold to pay that amount, and the tax effects thereof, shall not be subject to question by any beneficiary.

(p)     **Environmental Hazards**. The following provisions shall apply with respect to any real property held by any trust created hereunder:

(i)     The term "Environmental Law(s)"shall include any federal, state or local statute or ordinance or any regulation under any such statute or ordinance concerning environmental hazards or liability concerning environmental hazards.

(ii)     The Trustee shall have the power in its sole discretion to use and expend income and principal of any trust to (A) conduct environmental assessments, audits, and site monitoring to determine compliance with any Environmental Law; (B) take all appropriate remedial action to abate, contain, prevent, cleanup or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in response to any actual or threatened violation of any Environmental Law(s); (C) institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought or threatened by any local, state, or federal agency concerned with environmental compliance, or by a private litigant; (D) comply with any local, state, or federal agency order or court order directing an assessment, abatement, or cleanup of any environmental hazards; and (E) employ agents, consultants or legal counsel to assist or perform the above undertakings or actions.

(iii)     In addition to any other powers conferred upon the Trustee hereunder, the Trustee of each trust created hereunder shall have the following powers and discretions, exercisable in the discretion of the Trustee and without court order: (A) to disclaim, in whole or in part, any interests in property which the Trustee, in the Trustee's discretion, may determine could cause potential liability under any Environmental Law; (B) to require, in its sole discretion and at no cost to it, as a prerequisite to accepting any property, real or personal, to be added to the trust by any person, by lifetime or testamentary transfer or otherwise, that the donating party provide evidence satisfactory to the Trustee that (1) the property is not contaminated by hazardous or toxic materials or substances; and (2) the property is not being used and has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release or discharge of any hazardous or toxic materials or substances; (C) to set aside any property in a separate trust, and to further hold title to such property within a separate entity, including but not limited to a limited liability company, which shall be held and administered upon the same terms as those governing the remaining trust property, any interests in property, for any reason, including but not limited to a concern that such property could cause potential liability under any Environmental Law; and (D) to resign at any time it believes there is or may be a conflict between it in its fiduciary capacity and in its individual capacity because of potential claims or liabilities which might be asserted against any trust created hereunder because of the type or condition of the assets held in such trust.

(iv)     No Trustee shall be personally liable for any loss or depreciation in value sustained by any trust hereunder as a result of the Trustee retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any Environmental Law unless the Trustee contributed to the loss or depreciation in value through willful default, willful misconduct, or gross negligence.

**SECTION 7. Powers of Trustees**. In addition to the powers conferred by law upon Trustees, and not by way of limitation thereof, the Trustee is hereby authorized at any time or from time to time to exercise the following powers for the sole benefit of the beneficiary or beneficiaries of the trust or to refrain from exercising any of such powers:

(a)     to make any allocation, division or distribution of the trust estate in kind, in money, or partly in kind and partly in money, including, but not limited to, by means of the purchase of an annuity contract or other property for the benefit of a beneficiary to whom a distribution is to be made; to allocate different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or separate trusts, without liability for, or obligation to make compensating adjustments by reason of, disproportionate allocations of unrealized gain for federal income tax purposes; and to determine the value of property so allocated, divided or distributed;

B-6

(b)      to hold, manage, improve, repair and control all property, real or personal, at any time forming a part of the trust estate; to continue to hold any and all property, real or personal, received by the Trustee as a part of the trust estate or as an addition to the trust estate, even though the same be of a character other than that prescribed by law for the investment of trust funds or be of a larger proportion in one or more investments than the trust estate should, but for this provision, hold, including residential property, and irrespective of any risk, nonproductiveness, or lack of diversification;

(c)      to sell or to offer to sell for cash, credit or installments at public or private sale, to grant options to purchase, and to convey or exchange any or all of the property at any time forming a part of the trust estate, or any life estate, term of years, remainder or reversion therein for such price, including property of equivalent value (whether or not of like kind or similar use, and including life estates, terms of years, remainders or reversions), and upon such terms as the Trustee shall determine;

(d)      to lease or license the use of any tangible or intangible personal property at any time forming a part of the trust estate upon such terms as the Trustee shall determine;

(e)      to borrow money from any person including the Trustee; to extend or renew any existing indebtedness, and to mortgage or pledge any property at any time forming a part of the trust estate; to guarantee payment of any loan from a third person to a beneficiary or to a partnership of which a beneficiary or the trust is a general or limited partner and to pledge or hypothecate all or any part of the trust estate as collateral for such guarantee;

(f)      to settle, compromise, contest, agree to arbitrate and be bound thereby, extend the time for payment or abandon claims (including claims for taxes or penalties) or demands in favor of or against the trust estate or any part thereof; to reduce the interest rate upon any indebtedness to the trust when the Trustee shall deem such to be for the best interests of the trust; to consent to the extension of the period of limitations on assessment of any tax or penalty; to execute any contract, waiver, release, closing agreement, settlement or stipulation in connection with the above;

(g)      to sell, convey, release, mortgage, encumber, lease, partition, improve, manage, insure against loss, protect and subdivide any real estate, interests therein or parts thereof; to dedicate for public use, to vacate any subdivisions or parts thereof, to resubdivide, to contract to sell, to grant options to purchase, to sell on any terms; to convey, to mortgage, pledge or otherwise encumber said property, or any part thereof; to lease said property or any part thereof from time to time, in possession or reversion, by leases to commence in praesenti or in futuro and upon any terms and for any period of time, including a period extending beyond the term of the trust, and to renew or extend leases, to amend, change, or modify the terms and provisions of any leases and to grant options to lease and options to renew leases and options to purchase the whole or any part of the reversions; to partition or to exchange said real property, or any part thereof, for other real or personal property; to grant easements or charges of any kind; to release, convey or assign any right, title or interest in or about or easement appurtenant to said property or any part thereof; to construct and reconstruct, remodel, alter, repair, add to or take from buildings on said premises; to purchase or hold real estate, improved or unimproved, or any reversion in real estate subject to lease; to insure the Trustee and any person having an interest in or responsibility for the care, management or repair of such property against such risks as the Trustee deems advisable, and to charge the premiums therefor as an expense on the trust estate; to direct, or to authorize any other person to direct, the Trustee of any land trust of which the trust is a beneficiary to mortgage, lease, convey or contract to convey the real estate held in such land trust or to execute and deliver deeds, mortgages, notes, and any and all documents pertaining to the property subject to such land trust or in any matter regarding such trust; to execute assignments of all or any part of the beneficial interest in such land trust;

(h)      to abandon any property, real and personal, which the Trustee shall deem to be worthless or not of sufficient value to warrant keeping, protecting or maintaining; to abstain from the payment of installments due on purchase contracts or mortgages, taxes, water rents, assessments, repairs and maintenance with respect to any such property; to permit any such property to be lost by foreclosure, tax sale or other proceedings; to convey any such property for a nominal consideration or with consideration; to permit the expiration of any renewal, sale, exchange or purchase option with respect to any property or lease thereof;

(i)      to purchase or otherwise acquire, or to invest, reinvest or refrain from investing the trust estate wholly or partially in common stock or in any other securities or other type or types of assets (without regard to whether such shall be listed on any stock exchange or other public market, registered with any securities commissions or similar bodies or subject to contractual, legal or other restrictions, including "investment letter" restrictions), including but not limited to, bonds, notes, debentures, mortgages, preferred stocks, voting trust certificates, beneficial interests in land trusts, interests or shares in common trust funds, mutual funds, "open-end" or "closed-end" investment funds or trust, real estate investment trust or savings and loan or building and loan associations, oil, gas or other mineral interests or natural resources, motion picture, radio, television or CATV productions, programming and licenses, livestock or other animals, commodities, including hedging operations by the use of regulated futures contracts on such commodities, foreign exchange, insurance or endowment policies, annuities, variable annuities or other property or undivided interests in property, foreign or domestic, as the Trustee may deem advisable without being limited by any statute or rule of law regarding investments by Trustees; and in that connection, without limiting the

generality of the foregoing, to invest the trust estate or any part thereof in any partnership, limited partnership, limited liability company, joint venture, association or joint stock company and to have and to exercise all the powers of management and participation in the management necessary and incident to a membership in such partnership, limited partnership, limited liability company or other venture, including the making of charitable contributions or of any election available under any tax law by such partnership or venture, and at any time to participate in the incorporation of any such partnership or venture; to open accounts, margin or otherwise, with brokerage firms, banks or others, to invest the funds of the trust estate in, and to conduct, maintain and operate such accounts directly or through an agent for the purchase, sale, and exchange of commodities, stocks, bonds and other securities, and in connection therewith, to borrow money, obtain guarantees, and engage in all other activities necessary or incident to conducting, maintaining and operating such accounts;

(j)     to purchase or otherwise acquire, for cash, credit or installments, or to invest in, reinvest in, retain or continue for an indefinite term, any business or business interests, as shareholder, creditor, partner, proprietor, or otherwise, even though such interests may be closely or privately held or may constitute all or a large portion of the trust estate or a separate trust, without the necessity or requirement of application to or order from any court in any jurisdiction; to participate in the conduct of such business or to rely upon others to do so, and to take or delegate to others discretionary power to take any action with respect to its management and affairs which an individual could take as owner of such business, including the voting of stock, and the determination of all questions of policy; to take possession of the assets of such business, and to exercise complete control and management of such business, and in connection therewith to enter into and perform contracts, commitments, orders, and engagements; to incur expenses and debts in connection with the conduct and operation of such business, and to pay and discharge such expenses and debts; to join in and execute partnership agreements and amendments thereto; to participate in any incorporation, reorganization, merger, consolidation, recapitalization, liquidation or dissolution of such business or any change in its nature and to retain and continue such changed or successor business; to invest additional capital in, subscribe to or buy additional stock or securities of or make or guarantee new or increased secured, unsecured or subordinated loans to any business, with trust funds; to rely upon the reports of certified public accountants as to the operations and financial condition of any business, without independent investigation and without obligation to file any report with the court in any jurisdiction; to elect, employ and compensate directors, officers, employees or agents of any business, who may include the Trustee or a director, officer or agent of the Trustee; to deal with and act for such business in any capacity, including any banking or trust capacity and the loaning of money out of a Trustee's own funds, and to be compensated therefor; to sell, pledge or liquidate any interest in such business;

(k)     to exercise, or refrain from exercising, any election available under any tax law; to determine whether receipts shall constitute principal or income and whether expenses are properly chargeable to principal or income; (except as otherwise provided herein, the Trustee shall be governed in such determination by the provisions of the Principal and Income Act from time to time in force in the jurisdiction whose laws shall control the administration of the trust, or if there shall be no such act in force, by the Revised Uniform Principal and Income Act promulgated by the National Conference of Commissioners on Uniform State Laws, as then amended; in any instance not governed by any such Act, the Trustee is hereby authorized to determine what shall be charged or credited to income and what to principal and the determination of the Trustee shall be conclusive upon all persons); provided, however, that any capital gain dividends from investments in mutual funds, common trust funds or real estate investment trusts shall be deemed principal; to establish out of income and credit to principal reasonable reserves for depletion, but reserves for depreciation shall not be established except to the extent that the Trustee determines that readily marketable assets in the principal of the trust will be insufficient for any renovation, major repair, improvement or replacement of trust property which the Trustee deems advisable; to amortize premiums paid on the purchase of securities or other property;

(l)     to employ and pay reasonable compensation to such agents, contractors, brokers, advisors, trustees, titleholders, escrowees, custodians, depositories, accountants, attorneys, investment counsel, appraisers, insurers and others (who may be the Trustee himself in such other capacity or any firm with which the Trustee is associated) as may be necessary or desirable in managing and protecting the trust estate, and to execute any general or limited direction or power of attorney to reflect such employment;

(m)     to vote, or refrain from voting, any corporate stock either in person or by general or limited proxy, for any purpose, including without limiting the generality of the foregoing, for the purpose of electing any Trustee or beneficiary as a director of any such corporation; to exercise, or refrain from exercising, or to sell any conversion privilege, warrant, option or subscription right with respect to any security forming a part of the trust estate; to consent to take any action in connection with and reactive and retain any securities resulting from any reorganization, consolidation, merger, readjustment of the financial structure, sale, lease, mortgage, or other disposition of the assets of any corporation or other organization the securities of which may at any time form a part of the trust estate; to deposit any securities with or under the direction of a committee formed to protect said securities and to consent to or participate in any action taken or recommended by such committee; to pay all assessments, subscriptions and other sums of money which may seem expedient for the protection of the interest of such trust as the holder of such stocks bonds or other securities; to enter into an agreement making said trust liable for a pro rata share of the liabilities of any corporation which is being dissolved and in which stock is held, when in the opinion of the Trustee such action

B-8



October 1, 2007

Ray:

Attached please find an invoice received for the past month at Rosewood. In the meantime, I will see what I can do in terms of state and federal benefits. Again, I would really appreciate if you could find it in your heart to pay at least part of this invoice so mom doesn't have to worry about being bankrupt at her age. I appreciate any assistance you can offer.

Thanks,

Patty

/Att.

Ps: The next time someone asks me if I work, have worked, or what I have done in the past couple years instead of getting defensive I will say GRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRRR RR.................................... FYI, When a vegetarian/animal lover gets pissed off that is how we express anger GRRRRRRRRRRRRRRRRRRR...............☺

State of Illinois
Department of Public Health

# Notice of Involuntary Transfer or Discharge and Opportunity for Hearing



## FACILITY INFORMATION

Rosewood Care Center
**Name**

1800 Colonial Pkwy, Inverness, IL. 6000
**Address**

Cook
**County**

(847) 776-4760
**Telephone Number**

01-22-08
**Date of Notice to Resident**

## RESIDENT INFORMATION

Barbara Braun
**Name**

Patricia Williams
**Representative**

700 W. Ivanhue Apt #11
**Representative's Address**

Mount Prospect
Illinois 60056

(847) 963-1047
**Representative's Telephone Number**

☒ **FEDERAL PROCEEDING**     ☐ **STATE PROCEEDING**

☒ **FEDERAL PROCEEDING.** This facility admits private-pay and Medicare or Medicaid residents and is federally-certified and state licensed, or this facility admits only Medicare or Medicaid residents and is federally funded. **This facility seeks to transfer or discharge you** pursuant to the regulations of the Health Care Financing Administration for states and long-term care facilities, 42 CFR 483.12 ("federal regulations"). As recorded in your clinical record in accordance with Section 483.12 (a)(4) of the federal regulations, the reason for this proposed transfer or discharge is:

☐ your welfare and needs cannot be met in this facility, as documented in your clinical record by your physician, 483.12 (a)(2)(i);

☐ your health has improved sufficiently so you no longer need the services provided by this facility, as documented by your physician in your clinical record, 483.12(a)(2)(ii);

☐ the safety of individuals in this facility is endangered, 483.12(a)(2)(iii);

☐ the health of individuals in the facility would otherwise be endangered, as documented by a physician in your clinical record, 483.12(a)(2)(iv);

☒ you have failed, after reasonable and appropriate notice, to pay for your stay at this facility, 483.12(a)(2)(v); or

☐ this facility ceases to operate, 483.12(a)(2)(vi).

On the date of transfer or discharge, you will be relocated to:

Facility/Person   Village Nursing Home
Address   9000 N. Lavergne   Skokie Illinois 60077
Telephone   (847) - 679 - 2322

Pursuant to Section 483.12(a)(7) of the federal regulations, this facility will provide sufficient preparation and orientation to ensure your safe and orderly transfer or discharge from this facility.

1/2007

State of Illinois
Department of Public Health

# Notice of Involuntary Transfer or Discharge and Opportunity for Hearing



☐ **STATE PROCEEDING.** This facility admits only private-pay residents and is state-licensed. **This facility seeks to transfer or discharge you** pursuant to the Nursing Home Care Act, 210 ILCS 45/1-101, *et seq.*, ("state law"). You will be responsible for securing shelter and health care for yourself. You may seek relocation assistance from the Illinois Department of Public Health, including information on alternative placements.

As discussed with _____ on _____, 20____, and as documented in your clinical record pursuant to Section 3-408 of the state law, the reason for this proposed transfer or discharge is:

☐   medical reasons, 210 ILCS 45/3-401(a);

☐   your physical safety, 210 ILCS 45/3-401(b);

☐   the physical safety of other residents, the facility's staff or visitors, 210 ILCS 45/3-401(c); or

☐   late payment or nonpayment for your stay, 210 ILCS 45/3-401(d).

The responsible party, _____, has the right to pay the amount of the bill in full up to the the date the transfer or discharge is to be made and then you shall have the right to remain in this facility.

To obtain the name of a local representative of the Illinois Long-term Care Ombudsman Program in your community, you may call the Illinois Department on Aging, Senior Helpline, toll-free at **800-252-8966** or write to the Illinois Department on Aging, 421 E. Capital Ave., Springfield, IL 62701.

The agency responsible for the protection and advocacy of the developmentally disabled or mentally ill individuals is Equip for Equality, Inc.:

20 N. Michigan Ave., Suite 300, Chicago, IL 60602, 312-341-0022, (Voice) 800-537-2632, (TTY) 800-610-2779, (Fax) 312-341-0295

1617 Second Ave., Suite 210, P.O. Box 3753, Rock Island, IL 61204, 309-786-6868, (Voice) 800-758-6869, (TTY) 800-610-2779, (Fax) 309-786-2393

235 S. Fifth St., P.O. Box 276, Springfield, IL 62705, 217-544-0464, (Voice) 800-758-0464, (TTY) 800-610-2779, (Fax) 217-523-0720

The effective date of the proposed transfer or discharge is __Feb 20__, 20__08__. The person who will supervise your transfer or discharge is:

Name Patrick J. DiPaolo (Administrator)
Address 1800 Colonial Parkway, Inverness, Illinois 60067
Telephone (847) 776-4700

## APPEAL RIGHTS

Regardless of whether the facility's proposed action is under federal regulations or state law, **you have the right to appeal the decision to transfer or discharge you.**

If you think you should not have to leave this facility, you may file a Request for a Hearing with the Illinois Department of Public Health within 10 days after receiving this notice.

1/2007

Department of Public Health



# Notice of Involuntary Transfer or Discharge and Opportunity for Hearing

If you request a hearing, it will be held not later than 10 days after your request, and you generally will not be transferred or discharged during that time. If the decision following the hearing is not in your favor, you generally will not be transferred or discharged prior to the expiration of 30 days following receipt of the original Notice of Transfer or Discharge.

A form to appeal the facility's decision is attached. If you have questions, call the Illinois Department of Public Health at 217-782-4977. Your call will be directed to the appropriate individual.

A copy of this notice was placed in your clinical record and a copy was transmitted to the Illinois Department of Public Health, to you, to the long-term care ombudsman, to your representative or a family member, and, if your care is paid for, in whole or in part, through Title XIX, to the Illinois Department of Healthcare and Family Services on the 22 day of January, 20 0 8.

Signature of facility's agent _____

Title of agent    Administrator

Date    01. 22. 08

Name of facility attorney    Dan Maher

Attorney address    926 South Seventh Street Springfield IL. 62703

Attorney phone number    (217) 522-4515

1/2007

itness Clarence G502/Clarence Love

ictim Barbara .M. Braun/Brown

rsiyhm Alden estates

son. Ray Braun, willin partamn brandpar buill.

Ⓜ Ⓜ

Sunday 9th Mart

Amount of money Barbara is due to enherit $5000 or more. Withholder is of assets is her son Ray M. Braun.

wrence's Eywitness acounty, of cruel and unusal punishment.

1. She had no toilet, only a bucket, that wasn't changed for 1½ days.

2. There was three barrel's of biohazord . waste, open and exposed to the air in room.

3. She had no light that worked in the room, so room was dark.

4. She had no telephone, nor clock to tell the time, also she had no television.

5. Barbara .M. Braun, she had no string nor button to call for a nuse.

6. It was 9:15 pat night, her breakfast tray was still sitting on her table in her room.

Upon witnessing this, I called her son Ray M Braun, who was handling the will, and with holding all information about it.      1:30 pm

The following day, Barbara .M. Braun was placed at another hospital (Glen oaks      s) in their psychward.

During my visit with Barbara M. Braun, I was able to have lengthy conversations, with her. that made sense, and she was able to recall thing's from long ago, and recent. Her cognitive abilities appeared to be normal. The only worries she had, was wanting to live for a better

Yahoo! Mail - pwill57@yahoo.com

Yahoo! | My Yahoo! | Mail | Tutorials | More    **Make Y! your home page**    Welcome, **pwill57** Sign Out | All-New Mail | Help

# YAHOO! MAIL Classic

Search: [                    ] Web Search

**Comcast** Authorized Retailer
Get Comcast High-Speed Internet
$19.99 per month for the first 6 months
Includes PowerBoost™
Get this limited time offer now!
**Click here for details

| Mail | Contacts | Calendar | Notepad |

Mail For Mobile - Mail Upgrades - Options

Check Mail    Compose

[                    ] Search Mail    Search the Web

See your credit score - free    692

**Folders**    [Add - Edit]

**Inbox (4159)**

Draft
Sent
Bulk    [Empty]
Trash    [Empty]

**My Folders**    [Hide]

Correspondence ...

**Search Shortcuts**
My Photos
My Attachments

Watch HD movie trailers & clips

Yahoo! Small Business news & resources

30-yr fixed as low as 5.5%*.

Top Schools for Online Degrees

Previous | Next | Back to Search Results

Delete    Reply ▼    Forward ▼    Spam    Move... ▼

Printable View

This message is not flagged. [ Flag Message - Mark as Unread ]

From:    "RAY BRAUN" <braunray@msn.com>    Add Mobile Alert
To:    "Patricia Williams" <pwill57@yahoo.com>
Subject:    RE: Uncomfortable
Date:    Wed, 16 Apr 2008 07:56:26 -0500

I ordered checks from Mom's account, they will be arriving at your address by Friday.  I believe she has about $3,600 in a balance.  Also, I'm still confused as to what place will be appropriate for her.  You keep asking for money for her as if you had a place in mind.

She needs to see a pain doctor.  Dr. Noren with Advocate is the one that was referred to me by someone with a similar problem.

Also, as soon as I receive checks from dad's trust, I will be sending checks to all your kids.  That should be any day.  I can also get a check to you.  I will need releases signed for all checks disbursed due to your litigation threats.  I can send you $50,000 for now, maybe more once I get a handle on expenses.  I have already got one doctor to agree to cutting his bill in half from $3,300 to $1,650.

Delete    Reply ▼    Forward ▼    Spam    Move... ▼

Save Message Text | Full Headers

Previous | Next | Search Results

Check Mail    Compose

[                    ] Search Mail    Search the Web

Copyright © 1994-2008 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy